(No. 40902.-

THE PEOPLE *ex rel.* The Pennsylvania Railroad Company *et al.,* Appellants, *vs.* ILLINOIS COMMERCE COMMISSION *et al.*—(Maurice F. Radirizzi *et al.,* Appellees.)

*Opinion filed May 29, 1968.*

CALVIN K. HUBBELL, RICHARD O. OLSON, ROBERT D. KELLY, JOHN W. FOSTER, and JACK R. DAVIS, all of Chicago, for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, (EDWARD G. FINNEGAN, Special Assistant Attorney General, of counsel,) for appellees.

HENSLEE, MONEK & HENSLEE, of Chicago, (JOHN T. NAUGHTON and JOHN D. POPE, of counsel,) for intervenor.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is a direct appeal from an order of dismissal, entered by the circuit court of Cook County, of separate *mandamus* actions (later consolidated) by the New York Central Railroad Co., the Illinois Central Railroad Co., and the Pennsylvania Railroad Co. (Railroads) against the Illinois Commerce Commission to expunge a temporary order of the Commission with respect to Rule 99 governing train operation. The Brotherhood of Railroad Trainmen, the Brotherhood of Locomotive Firemen and Enginemen, and the Brotherhood of Locomotive Engineers (Brotherhoods) were permitted to intervene.

In 1964, the Railroads each modified its operating Rule 99 by eliminating the requirement that a trainman must provide manual flag protection for the rear of his train when the train is stopped or moving slowly upon portions of track protected by automatic train-activated block signals.

On November 18, 1964, representatives of the Brotherhoods filed joint complaints with the Commission against each of the Railroads seeking an order to require them to restore original Rule 99 on the ground that operating under the changes endangered the lives and safety of the Railroads' employees and the public. The Commission consolidated the complaints, hearings were commenced September 22, 1965, and were held intermittently thereafter. At the time of this appeal the cause was still pending before the Commission.

On December 18, 1965, the Brotherhoods filed motions requesting temporary relief by summarily ordering the Railroads to restore old Rule 99. Hearings were held on

April 14, 1966, and approximately five months later, on September 7, 1966, the Commission, by separate orders entitled "Summary Order Pending Final Order", required each Railroad, pending conclusion of the proceedings, to restore operating Rule 99 so that flag protection would be provided in block-signal territory.

The basis of the summary orders, as expressed in the findings of the Commission, was that the Commission did not have before it sufficient evidence to determine whether the changes in Rule 99 caused unsafe conditions and that the old rule should again be placed in effect until final disposition of the case. At the time of entry of the summary orders the Railroads had participated in the hearings by cross-examining the Brotherhoods' witnesses and presenting arguments on the question of whether the summary order should be entered, but they had been given no opportunity to introduce evidence on their own behalf. The *mandamus* actions were then filed on September 13, 1966.

Before approaching the substantive issues we must resolve serious doubt as to our jurisdiction to entertain this direct appeal. The Railroads seek to invoke it on two grounds. First, that the Commission's summary orders violated due process, and second, that our Rule 302(a)(5) provides for direct appeals from the circuit court in proceedings to review orders of the Commerce Commission. We will consider the grounds in inverse order.

Rule 302(a)(5) (Ill. Rev. Stat. 1967, chap. 110A, par. 302) provides for direct appeal to this court from final judgments of the circuit court in proceedings to "review" orders of the Commission. This proceeding was based on petitions for writs of *mandamus* to expunge the orders and upon motions to dismiss, not upon a review of the record leading up to the interim orders. A review on appeal is a continuation of the original proceeding, (I.L.P., Appeal and Error, sec. 5), whereas *mandamus* is a wholly new action. The rule contemplates direct appeal in those cases

where orders of the Commission are the subject of review by the circuit court in the normal course of statutory appeal and does not extend to the extraordinary remedy of *mandamus*.

Further, for the reasons hereinafter stated the interim orders do not deprive the Railroads of due process. The Commission interpreted the statute creating it as authorizing the entry of the summary order involved in this case. It may have been motivated by the belief that its action was justified under its inherent power to protect the safety of the public and employees of the Railroads, despite the inconclusive nature of the findings in the order. We do not at this time decide whether such authority was conferred upon the Commission by the statute. Assuming arguendo that it was so conferred, its exercise through an interim rather than a final order without opportunity of the Railroads to present evidence did not constitute a denial of due process.

The general rule with respect to nonfinal orders is stated in *Lichter* v. *United States* (1948), 334 U.S. 742, 791, 92 L. Ed. 1694, 68 S. Ct. 1294: "The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in the proceeding so long as the requisite hearing is held before the final order becomes effective." Citing *Opp Cotton Mills* v. *Administrator*, 312 U.S. 126, 152 and 153.

The summary seizure of banks and insurance companies in order to protect the public has been held to present no due process violation even without notice or hearing. In *State Savings and Commercial Bank* v. *Anderson* (1913), 165 Cal. 437, 132 P. 756, the State seized the property and business of a bank, and it was contended such seizure denied the bank due process. The California Supreme Court upheld the seizure, and the United States Supreme Court affirmed. (238 U.S. 611, 59 L. Ed. 1488.) That case was followed and its implications discussed at length in *Rhode Island In-*

*surance Co.* v. *Downey* (1950), 212 P.2d 965. (See also *McInnis* v. *McKay,* 127 Maine 110, 141 Atl. 699, affirmed in 279 U.S. 820, on authority of *Ownbey* v. *Morgan,* 256 U.S. 94, 65 L. Ed. 837, and *Coffin Bros. & Co.* v. *Bennett,* 277 U.S. 29, 72 L. Ed. 768.) Temporary injunctions are often issued over due-process constitutional objections.

It may well be that an interim order of the Commission under circumstances differing in material respects from the interim order in this case would require a different holding. For example, an interim order requiring substantial capital expenditure for changes in facilities, or one which would render substantially meaningless a subsequent final order, might require constitutional safeguards preceding the interim order. We do not view this as such a case. (*Cf.* 152 A.L.R. anno, 168.) While revocation of Rule 99 preceded by a considerable period of time the entry of the interim order and thus was not precisely an order maintaining the *status quo,* we view it as substantially such an order.

Since this is not a review under Rule 302(a)(5) and since there is no substantial constitutional question raised at this stage of the proceedings, the cause is transferred to the Appellate Court, First District.

*Cause transferred.*