REYNOLDS METALS COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.,* Respondents.

First District (3rd Division)    No. 81—3113

Opinion filed July 21, 1982.

Clifton A. Leke and Edward P. Kenney, both of Rooks, Pitts, Fullagar and Poust, of Chicago, for petitioner.

Tyrone Fahner, Attorney General, of Chicago (William E. Blakney, Assistant Attorney General, of counsel), for respondents.

JUSTICE McNAMARA delivered the opinion of the court:

Pursuant to section 35 of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1035), petitioner Reynolds Metals Company initiated this action by filing a petition with respondent Illinois Pollution Control Board seeking a variance from compliance with certain solid waste regulations adopted by the Board with regard to sanitary landfills. After hearings, the Board dismissed the petition for variance and denied Reynolds' subsequent petition for rehearing. Reynolds appeals from both orders, contending that the Board's dismissal of its petition for variance was invalid in that it was based on an erroneous interpretation of the Act. Reynolds asserts further that, had the Board considered the merits of the case, the manifest weight of the evidence would have demonstrated that it was entitled to an unconditional variance.

Reynolds owns and operates a plant for the fabrication of aluminum metal and aluminum alloys. On the same site, it leases an abandoned limestone quarry in which it disposes of solid wastes generated from the plant. Reynolds sought a variance from Rules 303, 305(a) and 305(b) of the Board's solid waste regulations which require certain cover and operational standards with respect to sanitary landfills "[u]nless otherwise specifically provided by permit." The Board is authorized to grant individual variance from its rules whenever it is shown that compliance would cause arbitrary or unreasonable hardship. (Ill. Rev. Stat. 1979, ch. 111½, par. 1035.) Reynolds asserts that such hardship would result from its compliance with these rules in that it would necessitate significant expenditures with no correspond-

ing environmental benefit.

In response to Reynolds' variance petition, the Illinois Environmental Protection Agency filed a recommendation in which it urged the Board to deny the variance or, in the alternative, to grant the variation with seven conditions. After negotiation, Reynolds agreed to all but two of the conditions.

After hearings, the Board denied the variance, finding that Reynolds had failed to obtain a permit as required by section 21(d) of the Act. (Ill. Rev. Stat. 1979, ch. 111½, par. 1021(d).) Where a permit specifies standards for operation and cover which differ from those normally imposed by Board rules, compliance with Board rules is not required. The Board reasoned, therefore, that since the agency might yet issue Reynolds an acceptable permit upon proper application, Reynolds had failed to establish an arbitrary or unreasonable hardship.

On appeal Reynolds contends that it is not subject to the Act's permit requirements and that the Board's decision was therefore invalid because it was based on an erroneous interpretation of section 21(d). At the time of the Board's decision and prior to September 3, 1981, section 21(d) provided:

"No person shall:

\* \* \*

(d) conduct any refuse-collection or refuse-disposal operations, except for refuse generated by the operator's own activities, without a permit granted by the Agency upon such conditions, including periodic reports and full access to adequate records and the inspection of facilities, as may be necessary to assure compliance with this Act and with regulations adopted thereunder, after the Board had adopted standards for the location, design, operation, and maintenance of such facilities. The above exception shall not apply to any hazardous waste, except that the exception shall apply to any person engaged in agricultural activity who is disposing of a substance which would normally be classified as hazardous if the substance was acquired for use by that person on his own property." (Ill. Rev. Stat. 1979, ch. 111½, par. 1021(d).)

On September 3, 1981, the section was amended to limit the exception for wastes generated by the operator's own activities to those which are "stored, treated, disposed or transported within the site where such wastes are generated." (Ill. Rev. Stat. 1981, ch. 111½, par. 1021(d)(1).) Reynolds argues that because the wastes in question are both generated and disposed on the site, it clearly comes within the exception under both the original and amended versions of the

Act.

While noting that an on site landfill of this type would ordinarily fall within the exception, the Board found that "[t]he amounts of refuse involved *** [were] too great and the site too unsound to allow such a site to be exempted from the Agency oversight which is inherent in the Agency's permitting program." Finding Reynolds' quarry "to present a real potential for serious environmental harm," the Board determined that it was not the type of activity envisioned by the legislature when it enacted this exception to its permit requirement.

■ The Board's determination that such potential harm exists was a factual one involving consideration of matters strictly within its expertise. Accordingly, it is appropriate that this court not substitute its judgment for that of the Board but merely determine whether its decision was reasonable in light of the evidence. *Tri-County Landfill Co. v. Pollution Control Board* (1976), 41 Ill. App. 3d 249, 353 N.E.2d 316.

Reynolds' landfill covers 3½ acres and ranges in depth from 80 to 85 feet. From 1970 through 1979, wastes disposed of in Reynolds' landfill included construction waste, banding iron, fluxing tubes, and sludge. Although materials were deposited prior to 1970, Reynolds offered no evidence as to their nature or characteristics. At the time the petition was filed, Reynolds was disposing of approximately 50 truckloads of construction waste per day. By the time of the second hearing the number of truckloads had been reduced to five.

Rule 303, from which Reynolds seeks a variance, requires that waste be deposited at the toe of the fill and spread and compacted into cells no more than two feet thick. Rule 305(a) requires six inches of daily cover, and Rule 305(b) requires 12 inches of intermediate cover in all areas where no refuse will be deposited within 60 days. The layer of material between the cells is to prevent transmission of water. Reynolds does not comply with the requirements; it merely pushes the refuse over the edge.

David Hendron, an expert in hydrogeology, testified that Reynolds produces very small amounts of leachate and that, despite its failure to comply with the rules, the water was of drinking quality. Leachate is groundwater which might be contaminated by materials from the landfill. The absence of groundwater contamination by leachate from Reynolds' landfill, however, is due to the influence of dewatering operations conducted by Material Service Corporation which operates a large quarry adjacent to that of Reynolds. Dr. Rauf Pishkin, an expert witness testifying for the Board, predicted adverse environmental

consequences should Material Service discontinue its dewatering operations. Reynolds presented no evidence of any contractual or other legal relationship that would guarantee the continuance of this operation.

The Board found that a quarry, due to its permeability, cracks, or fissures, is an extremely dangerous site for a landfill unless it is properly managed. Leachate produced in a quarry can be transmitted readily to the ground water, thus necessitating great diligence in the oversight of such a landfill. The absence of evidence as to materials previously dumped at the sight caused the Board further apprehension. It noted also that the leachate presently produced at the site would cause major pollution problems but for the dewatering activities conducted by Material Service. In light of Reynolds' lack of control over these activities, the Board concluded that Reynolds' landfill presents a great potential for serious environmental harm. We find that this conclusion was neither unreasonable nor against the manifest weight of the evidence.

■ We next address the issue of whether the Board correctly found that the potential for harm here renders the exception to the Act's permit requirement in section 21(d) inapplicable to Reynolds' landfill. A reviewing court is not bound by an agency's interpretation of the law under which it operates. That interpretation, however, should be given great weight. *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 348 N.E.2d 161; *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198.

Although the exception is inapplicable to hazardous wastes, there is no language in the Act which specifically limits the exception to wastes which pose no potential for environmental harm. The cardinal rule of statutory construction, however, is to ascertain and give effect to the legislative purpose and intent of the statute. (*People ex rel. Hanrahan v. White* (1972), 52 Ill. 2d 70, 285 N.E.2d 129.) In order to arrive at this intent, the statute must be considered as a whole. (*R.E. Joos Excavating Co. v. Pollution Control Board* (1978), 58 Ill. App. 3d 309, 374 N.E.2d 486.) It is generally unnecessary to look beyond the language of the statute. Yet, where, as here, different interpretations are urged, the court must look to the reasons for enactment of the statute and the purposes to be gained thereby and construe the statute in a manner which is consistent with that purpose. *R.E. Joos Excavating Co. v. Pollution Control Board.*

■ Pertaining to permits, the purpose of the Act is "to prevent the pollution or misuse of land, to promote the conservation of natural resources and minimize environmental damage by reducing the diffi-

culty of disposal of wastes and encouraging and effecting the re-cycling and re-use of waste materials, and upgrading waste collection and disposal practices." (Ill. Rev. Stat. 1979, ch. 111½, par. 1020.) In light of this purpose, the Board properly determined that the exception is inapplicable to Reynolds' landfill. It would be contrary to the objectives of the permit requirement to exempt from the agency oversight inherent in such requirement a landfill site which presents so great a potential for serious environmental harm.

■ The Board's determination that Reynolds, having failed to apply for the required permit, failed to show unreasonable hardship was also not against the manifest weight of the evidence. Thus, we need not consider Reynolds' argument that, absent the permit requirement, it should have been granted the variance without the disputed conditions.

For the reasons stated, the orders of the Illinois Pollution Control Board denying Reynolds Metals Company's petition for a variance and for a rehearing are affirmed.

Orders affirmed.

McGILLICUDDY and RIZZI, JJ., concurring.