I.F., Petitioner-Appellant, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES *et al.*, Respondents-Appellees.

First District (1st Division)   No. 85—2956

Opinion filed July 28, 1986.

Ryan & Miller, P.C., of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Rita M. Novak, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

The subject of this appeal is a judgment entered by the circuit court of Cook County pursuant to a complaint for administrative review (Ill. Rev. Stat. 1983, ch. 110, par. 3—103) affirming the decision of the Department of Children and Family Services (DCFS), denying petitioner's request to expunge a report that indicated there was credible evidence of child abuse regarding petitioner's discipline of her three-year-old son. Petitioner contends that the judgment of the trial court was erroneous as a matter of law and fact.

During the evidentiary hearing, Barbara Korasek, an investigator for the Division of Child Protection of DCFS, testified that she interviewed petitioner and her three-year-old son during the afternoon of March 31, 1984. The child told Korasek that he had been "bad to his sister," i.e., that he had taken cookies from her, and that his mother had "hit" him.

Korasek also testified that there was a half-inch mark on the child's temple, a one-inch mark under his right eye, and a one-half-inch mark under his left eye near his cheek. The petitioner told the investigator that her child had become "more out of control than usual," and he had taken a cookie from his sister and had been "very physically aggressive towards her." Petitioner reacted by "slapping" his face and "throwing" him into his crib. When the petitioner subsequently noted that the child's nose, bedding and pajamas were bloody, she telephoned the pediatrician who made a home visit. The doctor determined that the blood was a result of the petitioner's slapping the child and throwing him onto the bed. The petitioner told the investigator that she had never slapped her child so hard in the past.

John Freeman, an investigator for the Division of Child Protection, testified that at 8:40 a.m. on March 31, 1984, the agency received a report of "excessive force" inappropriate to the child's age. The report also stated that the petitioner had "lost all control," i.e., on the evening of March 30, 1984, the petitioner "slapped the child around" and "threw the child into a crib." When the petitioner ob-

served blood on the child's face, she became hysterical and called the pediatrician who administered tranquilizers to the petitioner during a home visit at two o'clock in the morning. The doctor also examined the child and found "only red cheeks—no bruises, or other visible injuries." Investigator Freeman added that according to the report, the petitioner had "lost control" and had hit the child in the past.

Subsequently, the investigator interviewed petitioner's husband who had been out of town at the time of the incident, but had returned in response to a telephone call from the family therapist who had been counseling the petitioner and her husband regarding their marital problems. In separate interviews the husband and therapist informed the investigator that petitioner had been "going through a stressful period."

When Investigator Freeman interviewed the pediatrician, the latter stated that he regularly provided medical treatment to the child. When the doctor arrived at petitioner's residence, petitioner was anxious, nervous, tired and frightened. The doctor remained there an hour. His knowledge that the family was in therapy caused him some concern about the child being struck by petitioner. The doctor thought it was an isolated incident, but reported it because he believed that petitioner's condition may precipitate a recurrence of the incident. The doctor added that although he had been aware that petitioner had disciplined the child with corporal punishment, he had not been aware of the extent of the punishment. The investigator stated that petitioner's physician had treated petitioner for stress and headaches but that he had not anticipated the instant incident. Finally, Investigator Freeman stated that petitioner had inflicted excessive punishment on her child, that a parenting class was necessary for her, and that the case should be maintained with DCFS so that it could be certain that petitioner participated in the class.

We shall now consider petitioner's contention that the trial court erroneously affirmed the DCFS decision to deny her request for an expunction of a report which indicated that there was credible evidence of child abuse regarding petitioner's discipline of her three-year-old son. An abused child is one whose parent inflicts excessive corporal punishment. (Ill. Rev. Stat. 1983, ch. 23, par. 2053(e).) Under section 4 of the Abused and Neglected Child Reporting Act, any physician having reasonable cause to believe a child known to him in his professional or official capacity may be an abused child shall immediately report or cause a report to be made to the Department of Children and Family Services (Ill. Rev. Stat. 1983, ch. 23, par. 2054). "An indicated report" means a report made under the statute if an

investigation determines some credible evidence of the existence of the alleged abuse or neglect. (Ill. Rev. Stat. 1983, ch. 23, par. 2053(e).) A person who is named in a report may seek to expunge it pursuant to section 7.16 of the statute.

"At any time subsequent to the completion of the Child Protective Service Unit investigation, a subject of a report may request the Department to amend, expunge identifying information from, or remove the record of the report from the register. If the Department refuses to do so or does not act within 30 days, the subject shall have the right to a hearing within the Department to determine whether the record of the report should be amended, expunged, or removed on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this Act. *** In such hearings, the burden of proving the accuracy and consistency of the record shall be on the Department and the appropriate Child Protective Service Unit. A court finding of child abuse or neglect shall be presumptive evidence that the report was not unfounded. The hearing shall be conducted by the Director or his designee, who is hereby authorized and empowered to order the amendment, expunction, or removal of the record to make it accurate and consistent with this Act." Ill. Rev. Stat. 1983, ch. 23, par. 2057.16.

On administrative review, neither this court nor the circuit court is to reweigh the evidence or the determination of the credibility of the witnesses, which is to be made by the agency. (*Dotson v. Bowling* (1981), 102 Ill. App. 3d 340, 430 N.E.2d 44.) When an agency is the finder of fact as well as the interpreter of the law below, a reviewing court is in a less than plenary position. While this court is not formally bound by the administrative decision as to the legal effect of statutory language, it should give that conclusion great weight, using it as a substantial factor in its own construction of the statute. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198.) Nevertheless, the cardinal rule of statutory construction is to ascertain and give effect to the legislative purpose and intent of the statute. (*Reynolds Metals v. Pollution Control Board* (1982), 108 Ill. App. 3d 156, 438 N.E.2d 1263.) The statute as a whole must be evaluated with each provision being construed in connection with every other provision and in light of the statute's general purposes. (*Braun v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1984), 125 Ill. App. 3d 1323, 465 N.E.2d 589.) It is plainly required that the legislative intent is primarily to be de-

rived from a consideration of the language used therein. *Hill v. Butler* (1982), 107 Ill. App. 3d 721, 437 N.E.2d 1307.

In the instant matter the facts are undisputed. Petitioner struck the young child on his face and threw him into his crib after he took a cookie from his younger sibling and exhibited aggressive behavior toward her. Subsequently, petitioner discovered that the child's nose, bedding and pajamas were bloody. She then telephoned the child's pediatrician who examined the child and administered tranquilizers to petitioner during a home visit. Thereafter, the doctor reported the incident to DCFS. Investigators from the Division of Child Protection interviewed petitioner, the child, and other interested persons.

■ DCFS found that there was sufficient credible evidence which indicated child abuse based on excessive corporal punishment and recommended family counseling. The circuit court affirmed the agency decision and denied petitioner's request to expunge the record. In an action for expunction under the statute, the burden of proving the accuracy and consistency of the record is upon the agency. (Ill. Rev. Stat. 1983, ch. 23, par. 2057.16.) Our review leads us to conclude that DCFS has sustained its burden of proof. As we have stated, the facts here are uncontested and the record thereof is consistent and accurate. Although this court may sympathize with petitioner's concern for expunction of the record, the court must effectuate the statutory purpose and intent of protecting children who may be the subject of abuse. Additionally, "identifying information" on this cause may be removed from the DCFS register no later than five years after the case is closed should there be no recurrences. Ill. Rev. Stat. 1983, ch. 23, par. 2057.14.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

QUINLAN, P.J., and CAMPBELL, J., concur.