CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Plaintiff-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—90—0260

Opinion filed June 12, 1992.

James P. Daley, Ronald J. Cuchna, Stuart F. Gassner, and Robert T. Opal, all of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield (James E. Weging, Special Assistant Attorney General, and Robert G. Toews, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

The circuit court of Cook County, in an action for administrative review (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*), affirmed a series of orders by the defendant Illinois Commerce Commission (the Commission), dismissing plaintiff Chicago and North Western Transportation Company's (CNW's) petition for apportionment of the cost of the removal of five abandoned railroad bridges. This appeal followed. For the reasons set forth below, we affirm.

The facts are not in dispute. In 1985, CNW abandoned a 2.6-mile rail line running through Evanston and Skokie, Illinois. The line included seven bridges. Five of these bridges were removed by CNW on its own initiative in late 1985 and early 1986 as part of the dismantling of the line. Two bridges remained, one spanning Green Bay Road and one spanning McCormick Boulevard. CNW did not remove these bridges because it did not believe it owned them.

In January 1987, defendant Illinois Department of Transportation (IDOT) filed two related petitions with the Commission. The first, Commission docket number 87—0003, requested a Commission order directing removal of the Green Bay Road bridge and apportioning the costs of removal. The second, Commission docket number 87—0008, requested similar relief as to the McCormick Boulevard bridge.

On February 26, 1987, CNW filed a cross-petition in docket number 87—0003, requesting the Commission to apportion costs for the removal of the five bridges previously removed by CNW. The cost of removal was alleged to be $245,000. CNW's cross-petition was dismissed in an "interim order" issued by the Commission on April 15, 1987.

In its "interim order" on docket number 87—0003, the Commission first set forth the relevant statute. (Ill. Rev. Stat. 1987, ch. 95½, par. 18c—7401(7).) The statute provides, in its entirety:

"(7) Abandoned Bridges, Crossing, and Other Rail Plant. The Commission shall have authority, after notice and hearing, to order:

(a) The removal of any abandoned railroad tracks from roads, streets or other thoroughfares in this State; and

(b) The removal of abandoned overhead railroad structures crossing highways, waterways, or railroads.

The Commission may equitably apportion the cost of such actions between the rail carrier or carriers, public utilities, and the State, county, municipality, township, road district, or other

public authority in interest." (Ill. Rev. Stat. 1987, ch. 95½, par. 18c—7401(7).)

After quoting the statute, the Commission went on to say:

"The Commission is of the opinion that that Section of the Law provides for apportionment of costs only in the instance where the Commission has held hearings and entered an Order for the removal of said structure. To find otherwise, the Cross-Petition could subject parties to the Commission's jurisdiction as to monetary payment after the action resulting in such costs has already been taken without hearing allowing such parties to participate, and without notice that such action might subsequently result in those parties bearing the costs of such action."

It also found that "it would be improper without notice and hearing, in violation of the due process to which the parties are entitled, to order retroactive apportionment of costs for the removal of said bridges."

In a final order on docket number 87—0003, entered November 24, 1987, the Commission refused to direct the removal of the Green Bay Road bridge, finding insufficient evidence to show that removal of the bridge was in the public interest, and ordered that if either IDOT or CNW ordered the removal of the bridge, the removing party should bear 100% of the cost of removal. The final order also "reconfirmed" the "interim order" dismissing CNW's cross-petition. In its final order, the Commission stated:

"The Commission is of the opinion that the Interim Order entered on April 15, 1987, was correct and the imposition of costs for the removal of the other five bridges without notice or hearing prior to the removal of the bridges would violate IDOT's due process and no such offset or payment would be proper."

Regarding the McCormick Boulevard bridge (docket number 87—0008), the Commission issued an "interim order" directing the removal of the bridge, and left the apportionment of costs for determination at a later date. In its final order, the Commission apportioned the costs of removal 50% to IDOT and 50% to CNW.

CNW filed a motion for rehearing on docket number 87—0003 before the Commission, contesting the dismissal of its cross-petition for apportionment of costs. The motion was denied. CNW then brought an action for administrative review in the circuit court. The circuit court affirmed the Commission's orders, and this appeal followed.

OPINION

On review, we may reverse an administrative agency's decision only if it is factually against the manifest weight of the evidence or if it is legally erroneous. (*Falato v. Teachers' Retirement Systems* (1991), 209 Ill. App. 3d 419, 423, 568 N.E.2d 233.) As noted above, the facts of this case are not in dispute. The single issue before us on appeal is whether the Commission's dismissal of CNW's cross-petition was contrary to section 18c—7401(7) of the Illinois Commercial Transportation Law. Ill. Rev. Stat. 1987, ch. 95½, par. 18c—7401(7).

■■ CNW contends that the Commission dismissed its cross-petition solely because the Commission was of the erroneous belief that to do otherwise would have been a violation of constitutional due process. CNW argues that there is no valid due process concern in apportioning removal costs for bridges removed without a prior Commission order, and as a result we should remand this matter to the Commission for a hearing on the merits. On appeal the Commission apparently concedes this point as well, as it makes no argument to the contrary. We agree that so long as the parties have notice and an opportunity to be heard prior to any order of apportionment, allowing apportionment for the voluntary removal of abandoned tracks or other structures would not violate due process. (See *People ex rel. Pennsylvania R.R. Co. v. Illinois Commerce Comm'n* (1968), 40 Ill. 2d 58, 61, 237 N.E.2d 514 ("demands of due process do not require a hearing, at the initial state or at any particular point or at more than one point in the proceeding so long as the requisite hearing is held before the final order becomes effective").) However, we disagree with CNW that remandment is required.

The Commission contends that although "notice and hearing," terms used by the Commission in its decisions, are traditional constitutional due process concerns, they are also requirements of the statute, which provides that the Commission's authority requires "notice and hearing." It is the Commission's position that the orders were based not on constitutional analysis but rather were the result of the Commission's interpretation of the statute. Consequently, the Commission urges, its construction of the statute is entitled to deference upon review.

We agree with the Commission that deference should be given to the statutory construction by the agency. Upon review, the construction of a statute by the agency charged with its administration and enforcement is entitled to "substantial weight and deference." (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983),

95 Ill. 2d 142, 152, 447 N.E.2d 295.) Although we are not bound by an agency's statutory interpretation which is based upon a clearly erroneous premise (*Dunaway v. Department of Labor* (1982), 109 Ill. App. 3d 63, 68, 440 N.E.2d 231, *rev'd on other grounds* (1984), 99 Ill. 2d 417, 459 N.E.2d 1332), we must otherwise give "great weight" to the agency's construction in our own construction of the statute. *Peoples Gas Light & Coke Co. v. Illinois Commerce Comm'n* (1987), 165 Ill. App. 3d 235, 247, 520 N.E.2d 46 (court not "formally bound" by agency's interpretation, but must give "great weight" to that interpretation in its own construction). See also *Farmers State Bank v. Department of Employment Security* (1991), 216 Ill. App. 3d 633, 640, 576 N.E.2d 532 (court should "accord substantial weight and deference to the interpretation of a statute which the agency administers and enforces"); *Castillo v. Jackson* (1990), 207 Ill. App. 3d 799, 803, 566 N.E.2d 404 (court must give "substantial weight and deference" to agency's interpretation).

We further question whether the later use of the term "due process" in the Commission's findings compels the conclusion that the Commission's results were predicated upon the premise of constitutional compulsion which has been shown to be erroneous. (*People ex rel. Pennsylvania R.R. Co. v. Illinois Commerce Comm'n*, 40 Ill. 2d 58, 237 N.E.2d 514.) We observe that in the "interim order," the Commission's references to notice and hearing immediately follow its reference to the statute. Although later in the interim order and in the final order the term "due process" was used, it is by no means clear that a constitutional reference was what was intended, given that earlier in the interim order the Commission appears to be speaking to the requirements of the statute rather than in a constitutional sense.

Our disposition of this case, however, does not depend on whether the Commission was referring to constitutional due process or the requirements of the statute, since our own construction of the statute would also require that CNW's cross-petition be dismissed.

A statute must be read as a whole, and each provision construed with every other provision in determining the intent of the legislature. (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 318, 547 N.E.2d 437; *I.F. v. Department of Children & Family Services* (1986), 146 Ill. App. 3d 68, 71, 496 N.E.2d 1162; *Peoples Gas Light & Coke Co. v. Illinois Commerce Comm'n*, 165 Ill. App. 3d at 247.) CNW argues that proper construction of the statute does not require that the Commission order removal of a bridge in order to apportion removal costs. Under CNW's construction, the statute pro-

vides two separate and independent grants of authority to the Commission: the authority to order removal of the listed structures, and the authority to apportion costs. It is CNW's position that the plural "actions" in the second sentence of the statute dealing with apportionment must refer to the bare act of removal of the two types of structures listed in the first sentence: abandoned railroad tracks (subsection (a)), and abandoned overhead rail structures (subsection (b)). Thus, CNW reasons, the power to apportion in the second sentence arises from the actual removal work, not from the fact that the Commission ordered the removal, and an order for removal is not required before the Commission may apportion costs.

■ CNW's proposed construction fails to consider the statute as a whole. When read in its entirety, it becomes apparent that "such actions" refers to removals made pursuant to a Commission order. To argue, as GNW does, that the plural "actions" in the second sentence refers to the bare acts of removal of the two types of structures in subsections (a) and (b) is to read the second sentence in isolation from the first. Construction of the two sentences in conjunction with each other fully supports the Commission's conclusion that apportionment requires a prior order of removal for which the statute requires notice and hearing.

This construction is most consistent with the overall pattern of the statute which gives the Commission authority to order removal in the first instance. Although the railroad need not obtain Commission permission to remove an abandoned structure once it has received abandonment authority from the applicable agency (here the Interstate Commerce Commission) (*Illinois Commerce Comm'n v. Interstate Commerce Comm'n* (D.C. Cir. 1989), 879 F.2d 917), it is clear that the right to obtain apportionment of the costs of removal through Commission order flows from and is a consequence of the language of section 18c—7401(7), which grants the Commission power to order the removal in the first instance.

This result is also consistent with the approach taken by the Commission in construing other sections of the statute. The Commission noted in its final order in docket number 87—0003 that although subsection 18c—7401(7) is a new power under the 1986 Illinois Commercial Transportation Law, its language is virtually identical to that in subsection 18c—7401(3), which deals with construction and alteration of grade crossings. (Ill. Rev. Stat. 1989, ch. 95½, par. 18c—7401(3).) Thus, earlier interpretations of section 62 (Ill. Rev. Stat. 1983, ch. 111⅔, par. 62), the predecessor to section 18c—7401(3), would be enlightening in interpreting section 18c—7401(7). Under section 18c—

7401(3), the Commission cannot apportion costs without first approving and directing the work to be done. "[P]ower to apportion the expense of eliminating a grade crossing [is] inseparable from the power to determine its necessity and manner of accomplishment." (*City of Chicago v. Chicago & North Western Ry. Co.* (1955), 4 Ill. 2d 307, 312, 122 N.E.2d 553, citing *City of Chicago v. Illinois Commerce Comm'n* (1934), 356 Ill. 501, 190 N.E.2d 896.) Our interpretation of section 18c—7401(7) is in conformity with this position.

We are not persuaded by CNW's attempt to distinguish section 18c—7401(3) from section 18c—7401(7) by the fact that section 18c—7401(3) contains an express requirement that Commission authority be obtained before grade crossings can be constructed or altered, and section 18c—7401(7) contains no such express requirement regarding removal of abandoned structures. No one is arguing that CNW did not have the right to remove its abandoned bridges, or that a Commission order was required prior to removal. Nevertheless, the pattern still remains that the agency first orders removal, and then apportionment may follow.

We note that this approach is consistent with the procedure used by the Commission in the McCormick Boulevard bridge matter (docket number 87—0008). There the Commission in an interim order directed the removal of the McCormick Boulevard bridge, reserving the question of apportionment of costs for determination at a later date. Although the Commission did not require that apportionment be determined simultaneously, it did act to order removal first so that the order of removal would precede any further act of apportionment. There is nothing in the statute that mandates that apportionment be decided at the same time removal is ordered, yet the action taken regarding the McCormick Boulevard bridge shows the relationship between the two actions: an order of removal must precede an order of apportionment of costs.

■ CNW urges that we should remand this matter to allow the Commission to set forth in greater detail its reasons for its ruling, arguing that without such detail we cannot "intelligently review" the Commission's decision. In support, CNW directs our attention to *Cerro Copper Products v. Illinois Commerce Comm'n* (1980), 83 Ill. 2d 364, 369-70, 415 N.E.2d 345, and *Peoples Gas, Light & Coke Co. v. Illinois Commerce Comm'n* (1988), 175 Ill. App. 3d 39, 48-49, 529 N.E.2d 671. Those cases dealt with the necessity for an agency to set out with specificity its findings of fact so that an intelligent review could be made. Such specificity is required due to the deference a reviewing court must give to such findings. (*Cerro Copper Products*, 83

Ill. 2d at 370 ("[o]ne reason for requiring specificity in the finding of facts is that reviewing courts are not permitted to conduct a *de novo* review").) Here, however, the question is not one of reviewing factual findings by the Commission, but rather one of statutory interpretation. Inasmuch as an agency's determinations of law are not accorded as great a degree of deference as are its findings of fact (*Dunaway v. Department of Labor*, 109 Ill. App. 3d at 68 ("We are not bound to give the same deference to an administrative agency's construction of a statute that we give to its findings of fact")), the same degree of specificity should not be required. Moreover, here our ultimate result based upon our own independent analysis is in accord with the ultimate determination of the agency. Accordingly, we do not find any need for reversal and remandment to elicit a clearer exposition by the Commission of its statutory interpretation.

Accordingly, for all the above reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNULTY, P.J., and LORENZ, J., concur.