THOMAS M. MADDEN AND COMPANY, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Second District   No. 2—94—0419

Opinion filed April 18, 1995.—Rehearing denied June 14, 1995.

James E. Ryan, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellant.

Edward P. McNeela, Cornelius Francis Riordan, and Mary E. Gardner, all of McNeela & Griffin, Ltd., of Chicago, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, the Department of Revenue (Department), appeals from the order of the trial court upon administrative review reversing the Department's decision that plaintiff, Thomas M. Madden & Company, is liable to the Department for use tax on a Town and Country slip form paver purchased by plaintiff in August 1988 in Wisconsin. The court found that the Department's decision that plaintiff failed to prove the paver was exempt from taxation was against the manifest weight of the evidence. The Department appeals, contending that the trial court erred in reversing the Department's decision, as the slip form paver did not qualify for the manufacturing exemption of the Use Tax Act (the Act) (35 ILCS 105/3—5(18) (West 1992)).

On or about August 8, 1988, plaintiff, a road contractor specializing in concrete paving, purchased a slip form paver (the paver) from Rexworks, Inc., of Milwaukee, Wisconsin, and took delivery of the paver in Illinois. Plaintiff did not pay any Wisconsin sales tax or Illinois use tax on the piece of machinery. On March 20, 1990, following an audit of plaintiff for the years 1981 through 1991, the Department determined that plaintiff was liable for $13,500 in use tax for the purchase of the paver. The Department issued a notice of tax liability and also imposed a penalty in the amount of $4,050. Plaintiff filed a timely protest based on its claim that the paver was not subject to use tax because the paver qualified for the manufacturing exemp-

tion set forth in section 3—5(18) of the Act (35 ILCS 105/3—5(18) (West 1992)).

An administrative hearing was held on plaintiff's claim on March 4, 1993. The Department's evidence consisted of the written results of its audit and the notice of tax liability. Plaintiff presented documentary evidence, consisting of the purchase invoice for the paver, a multipage brochure describing the operation of the paver, and 13 photographs depicting the paver in operation. Additionally, plaintiff presented testimonial evidence from two witnesses, John Jacobs, an aggregate equipment specialist who had sold the paver in question to plaintiff, and Robert Madden, Jr., president of Thomas M. Madden & Company.

Both Jacobs and Madden testified as to their familiarity with functions of the paver. With the aid of photographs, the witnesses explained how the paver transforms raw concrete, *i.e.*, a mixture of water, sand, gravel, and aggregate, into a finished product, the roadway. The testimony showed that after raw concrete is delivered to a jobsite and discharged onto the roadbed, the paver is run over the concrete. A screw-like device, an augur, keeps the concrete from segregating by moving across it from side to side and spreading it to the required dimensions of the roadway. Once the augur spreads the concrete, a "strike-off assembly" flattens and smooths out the concrete. Next, vibrators move the coarser stone down off the top of the surface and bring the finer sand and cement to the top, eliminating any air pockets in the concrete. Last, a "tamper bar" pushes the concrete down creating a smooth surface. Left behind the machine after it passes over the concrete is the "finished product of roadway."

Jacobs acknowledged that the paver does not make concrete. It forms the concrete into a product that can be used by the end user, *i.e.*, anyone who has contracted to have a road put in, for example, the Department of Transportation. Both Jacobs and Madden stated that Illinois requires that a paver be used to produce a functional road.

On April 26, 1993, the Department issued its notice of decision, accepting the administrative judge's recommendation that plaintiff be denied an exemption from the Act because the paver was used in the construction of roadways, which, according to the administrative judge, constituted real property. Subsequently, plaintiff filed a complaint for administrative review. Following a hearing on plaintiff's complaint, the trial court reversed the Department's decision, finding it was against the manifest weight of the evidence. This appeal followed.

■ ■ An administrative agency's decision may be reversed only if it is factually against the manifest weight of the evidence or if it is legally erroneous. (*Chicago & North Western Transportation Co. v. Illinois Commerce Comm'n* (1992), 230 Ill. App. 3d 812, 815.) In the present case no factual dispute exists. It is uncontested that plaintiff, a road contractor specializing in concrete paving, purchased a slip form paver in Wisconsin in August 1988 on which it paid no use tax. Thus, this court is faced only with a question of law, *i.e.*, whether the paver was subject to taxation under the Use Tax Act. (35 ILCS 105/3 (West 1992).) When the question raised on review is purely legal, such as statutory construction, an agency's interpretation should receive deference because it flows from its experience and expertise, but our review is *de novo. Board of Education of Du Page High School District No. 88 v. Illinois Educational Labor Relations Board* (1992), 246 Ill. App. 3d 967, 973-74.

■ Under the Use Tax Act, a tax is imposed "upon the privilege of using in this State tangible personal property purchased at retail from a retailer." (35 ILCS 105/3 (West 1992).) Plaintiff's position, here, as throughout the proceedings leading up to this appeal, is that the slip form paver is exempt from taxation because it falls within the manufacturing exemption to the Act. (35 ILCS 105/3—5(18) (West 1992).) That exemption applies to "[m]anufacturing and assembling machinery and equipment used primarily in the process of manufacturing or assembling tangible personal property for wholesale or retail sale or lease." (35 ILCS 105/3—5(18) (West 1992).) The Department contends, however, that this exemption does not pertain to the paver because it does not manufacture or assemble tangible personal property.

■ To determine whether the paver is exempt from use tax involves engaging in a two-tier analysis, as our supreme court did in *Van's Material Co. v. Department of Revenue* (1989), 131 Ill. 2d 196, wherein the court decided that a ready-mix concrete truck was exempt from the tax under the manufacturing exemption of the Act. The court's analysis entailed analyzing the exemption itself to determine the boundaries of the statute and then deciding if the statutory exemption was applicable to that particular case. (131 Ill. 2d at 201-02.) We apply this same analysis to the present case.

■ Our objective in construing the manufacturing exemption statute is to determine and give effect to the intent of the legislature (*Highland Park Women's Club v. Department of Revenue* (1990), 206 Ill. App. 3d 447, 456), and that intent is best evidenced by the language used by the legislature (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189). Statutes granting tax exemptions are to be construed strictly in favor of the taxing body and against exemption, and the

party claiming an exemption bears the burden of clearly proving he comes within the statutory exemption. *Medcat Leasing Co. v. Whitley* (1993), 253 Ill. App. 3d 801, 803.

We begin our analysis by examining the language of the manufacturing exemption statute (35 ILCS 105/3—5(18) (West 1992)) but note that the language of the statute has previously been analyzed by the supreme court in *Van's Material Co.* There, the court determined that the following three words or phrases formed "the gist" of the statute: (1) "tangible personal property," (2) "process of manufacturing or assembling," and (3) "primarily." (*Van's Material Co.*, 131 Ill. 2d at 203.) We examine the statute bearing in mind this determination.

■ While we recognize that the paver is "primarily" used to transform raw concrete left at a jobsite into concrete paving, we are not persuaded that the process involved in producing the paving can be considered to be the production of an article of tangible personal property. Under the Act, "[m]anufacturing process" is defined in relevant part as:

> "*the production of an article of tangible personal property*, whether the article is a finished product or an article for use in the process of manufacturing or assembling a different article of tangible personal property, by a procedure commonly regarded as manufacturing, processing, fabricating, or refining that changes some existing material into a material with a different form, use, or name." (Emphasis added.) (35 ILCS 105/3—50(1) (West 1992).)

"Assembling process" means:

> "*the production of an article of tangible personal property*, whether the article is a finished product or an article for use in the process of manufacturing or assembling a different article of tangible personal property, by the combination of existing materials in a manner commonly regarded as assembling that results in an article or material of a different form, use, or name." (Emphasis added.) (35 ILCS 105/3—50(2) (West 1992).)

As defined, the process through which the paver changes raw concrete into concrete paving does not meet the requirements for the manufacturing exemption since the process does not produce an "article of tangible personal property." Although the paver transforms raw concrete, which has been found to constitute tangible personal property (*Van's Material Co.*, 131 Ill. 2d at 204), into a material with a different form, that resultant material, in our view, no longer constitutes personal property but, rather, real property.

■ "Real property" is "[l]and, and generally whatever is erected or growing upon or affixed to land." (Black's Law Dictionary 1218 (6th ed. 1990).) By its own terms, this definition includes the construc-

tion of highways, intersections, gutters, sewers, and curbs. (*Billman v. Crown-Trygg Corp.* (1990), 205 Ill. App. 3d 916, 923.) What the slip form paver produces, or constructs, is concrete pavement which, in the present case, took the form of a roadway.

That the paver is used primarily in the construction of roadways was proven through the testimony of plaintiff's own witnesses at the administrative hearing. John Jacobs, an aggregate equipment specialist who had 20 years of experience working with the paver and who had been instrumental in selling the paver in question to plaintiff, testified both on direct and cross-examination that the "end finished product" produced by the machine was a "roadway." Jacobs acknowledged that the paver did not manufacture concrete but rather processed the concrete into a product that could be used by the end user, *i.e.*, anyone contracting to have a road put in, in this case, the Department of Transportation (DOT). Robert Madden, Jr., president of plaintiff, stated that plaintiff's principal business is as a road contractor and that a slip form paver is necessary to process raw concrete into a "finished roadbed, roadway." Madden's testimony, as well as that of Jacobs, constituted support for the administrative judge's decision that the paver created a concrete roadway.

Contrary to plaintiff's position, a roadway cannot be deemed "tangible personal property," as it is something affixed to the land and, therefore, real property. (*Billman*, 205 Ill. App. 3d at 923.) As the Department points out, plaintiff presented no evidence that the roadway was moveable, portable, or in any way intended to be temporary. To be exempt from taxation on the paver, plaintiff had to prove that the slip form paver is "machinery and equipment used primarily in the process of manufacturing or assembling personal property." Plaintiff failed to meet its burden of proving clearly that the paver came within the provisions of this exemption. Thus, under the plain language of the manufacturing exemption, the paver is not exempt from use tax.

■ We have carefully reviewed the cases relied upon by plaintiff to support its position that the concrete roadway created by the paver did not constitute real property. None persuades us to accept plaintiff's position because the analogies plaintiff attempts to present are, as the Department argues, either flawed or have the effect of supporting the Department's conclusion that the paver produced realty rather than personalty.

We note, in particular, that plaintiff's reliance on *Van's Material Co.* is misplaced. There, our supreme court determined that the purchase of a ready-mix concrete truck was exempt from the use tax because the truck constituted machinery used primarily in the pro-

cess of manufacturing tangible personal property. In *Van's Material Co.* the evidence established that four different components, sand, limestone, water, and cement, were put into the mixer drum of a ready-mix truck where they were changed into a new material, ready-mix concrete. The truck's engine powered the drum. Therefore, the engine had to remain running from the time the four components were placed in the mixer drum until the new product, ready-mix concrete, was created and delivered to the purchaser, who, in turn, would form the concrete into the desired shape. Based on these facts, the court found that the truck was essential to the process of creating the ready-mix concrete. As the Department of Revenue had not contested that ready-mix concrete constituted tangible personal property and as the Department had taken the position, in an earlier case, that it was personal property (*Van's Material Co.*, 131 Ill. 2d 196), the court concluded that ready-mix concrete trucks came within the provisions of the manufacturing exemption of the Use Tax Act. Therefore, the purchase of such trucks was exempt from use tax.

Here, we acknowledge, as does the Department, that the initial product used to make concrete paving, *i.e.*, the ready-mix or raw concrete, is tangible personal property when delivered and discharged onto the roadbed. But, through the use of the paver, the form of the concrete is changed to real property as the paver spreads, smooths, and flattens the raw concrete into something affixed to the ground, *i.e.*, a roadway. That the concrete constitutes real property at that point was recognized by the supreme court, in *dicta*, in *Van's Material Co.*, wherein the court stated that ready-mix concrete "may sometimes become so affixed to the ground as to be considered real property." *Van's Material Co.*, 131 Ill. 2d at 204.

The facts that ready-mix concrete, as spread into the roadbed, may take up to 24 hours to reach a solid state or as long as 28 days for the full curing process and that it needs such finishing touches as lane lines or curbs do not, in our opinion, make it any less a roadway. It is the purpose for which property is sold that is determinative. (*Herlihy Mid-Continent Co. v. Nudelman* (1937), 367 Ill. 600, 604.) Here, it was evident from the testimony of plaintiff's president and its other witness that what plaintiff was selling to the purchaser, in this case DOT, was a road. Madden testified that he was a "road" contractor and, like Jacobs, stated that the finished product created by the slip form paver was a "roadway." As a roadway is considered affixed to the land (*Billman*, 205 Ill. App. 3d at 923), plaintiff's finished product constituted realty rather than personalty. We conclude that the result reached in *Van's Material Co.* is distinguishable from the result we reach here.

As the slip form paver does not manufacture or assemble tangible personal property, we find the paver does not qualify for the manufacturing exemption of the Use Tax Act. Accordingly, we reverse the judgment of the circuit court of Du Page County, which reversed the final decision of the Department of Revenue denying plaintiff the tax exemption.

Reversed.

McLAREN, P.J., and HUTCHINSON, J., concur.