ZENITH ELECTRONICS CORPORATION, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (4th Division)    No. 1—96—0326

Opinion filed November 26, 1997.

Richard A. Hanson, of McDermott, Will & Emery, of Chicago, for appellee.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for appellant.

JUSTICE McNAMARA delivered the opinion of the court:

Defendant, the Illinois Department of Revenue (Department), appeals from an order of the trial court upon administrative review reversing the Department's decision that plaintiff, Zenith Electronics Corp. (Zenith), is liable to pay taxes on certain trays Zenith uses to protect cathode ray tubes. The court found that the Department's determination that the trays were subject to taxation under the Use

Tax Act (35 ILCS 105/1 *et seq.* (West 1992)) and/or the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/1 *et seq.* (West 1992)) was against the manifest weight of the evidence. The Department appeals, contending that the trial court erred in reversing the Department's decision that the trays were not exempt from taxation as equipment used primarily in the manufacturing or assembling of tangible personal property. We affirm the trial court.

The record reveals that Zenith has a plant located in Melrose Park, Illinois, where it manufactures color cathode ray tubes (CRTs) used in television and computer monitors. Zenith manufactures and assembles televisions at another plant in Springfield, Missouri. The Springfield plant was a "matched facility" in that it was designed to handle the CRT production from the Melrose plant. In 1986, 77% of the CRTs manufactured at the Melrose plant were shipped to Zenith's Springfield plant. In 1987, 51% of the Melrose plant's production went to Springfield, and, in the first six months of 1988, Springfield received 52% of the Melrose plant's output. The other CRTs produced at the Melrose plant were sold to third parties, including subsidiaries of Zenith.

The evidence shows that CRTs are extremely fragile. They are essentially glass surrounding a vacuum and are likely to implode if not properly protected. Zenith previously used cardboard trays to protect the CRTs, but now uses specially designed plastic trays for this purpose. When CRTs come off the production line at the Melrose plant, they are placed in the trays, which handle from six to eight CRTs each. A "tray set" consists of several plastic trays stacked on top of each other. Each tray set weighs about 60 pounds and is purchased by Zenith from an unrelated company. The tray sets are immediately loaded onto trucks for delivery to the Springfield plant or other third-party manufacturers. Once CRTs are shipped to the Springfield plant and other third parties, the tray sets are generally sent back to the Melrose plant for reuse.

Following an audit at Zenith for the time period of January 1, 1986, through June 30, 1988, the Department issued a notice of tax liability informing Zenith that it was liable to pay taxes on the trays. Zenith filed a timely protest based on its claim that the trays were not subject to taxation under the manufacturing and assembling exemptions to the Use Tax Act (35 ILCS 105/3—5(18), 3—50 (West 1992)) and the ROTA (35 ILCS 120/2—5(14), 2—45 (West 1992)). Following an administrative hearing on Zenith's claim, the Department issued its decision accepting the administrative law judge's recommendation that Zenith be denied exemption. Zenith thereafter filed a complaint for administrative review in the circuit court of Cook

County. Following a hearing on Zenith's complaint, the trial court reversed the Department's decision, finding it against the manifest weight of the evidence. This appeal followed.

■ An administrative agency's decision may be reversed only if it is factually against the manifest weight of the evidence. *Thomas M. Madden & Co. v. Department of Revenue*, 272 Ill. App. 3d 212, 651 N.E.2d 218 (1995). Where no factual dispute exists, and the question raised on review is purely legal, such as statutory construction, our review is *de novo*. *Madden*, 272 Ill. App. 3d at 215, 651 N.E.2d at 220. Here, the parties agreed that the facts are not in dispute and the trial court adopted the findings of fact made by the administrative law judge. Thus, we are faced only with the question of whether the trays used to protect CRTs are exempt from taxation under the manufacturing and assembling exemptions to the Use Tax Act (35 ILCS 105/3—5(18), 3—50 (West 1992)) and the ROTA (35 ILCS 120/2—5(14), 2—45 (West 1992)). The parties acknowledge that these exemptions contain identical language. Accordingly, while we will address the question in terms of the use tax, our decision is applicable to both acts.

To determine whether the trays are exempt involves engaging in the analysis conducted by the supreme court in *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 545 N.E.2d 695 (1989), where the same statutory provisions were at issue. The court's analysis entailed analyzing the exemption itself to determine the boundaries of the statute and then deciding if the statutory exemption was applicable to that particular case. *Van's Material*, 131 Ill. 2d at 201, 545 N.E.2d at 698; *Madden*, 272 Ill. App. 3d at 215, 651 N.E.2d at 220.

■ Under the Use Tax Act, a tax is imposed "upon the privilege of using in this State tangible personal property." 35 ILCS 105/3 (West 1992). According to the manufacturing and assembling exemption, the tax does not apply to "[m]anufacturing and assembling machinery and equipment used primarily in the process of manufacturing or assembling tangible personal property for wholesale or retail sale or lease." 35 ILCS 105/3—5(18) (West 1992). This exemption "includes machinery and equipment that replaces machinery and equipment in an existing manufacturing facility as well as machinery and equipment that are for use in an expanded or new manufacturing facility." 35 ILCS 105/3—50 (West 1992). The exemption also defines "manufacturing process" and "assembling process" in the following manner:

> "(1) 'Manufacturing process' means the production of an article of tangible personal property, whether the article is a finished product or an article for use in the process of manufacturing or

assembling a different article of tangible personal property, by a procedure commonly regarded as manufacturing, processing, fabricating, or refining that changes some existing material into a material with a different form, use, or name. In relation to a recognized integrated business composed of a series of operations that collectively constitute manufacturing, or individually constitute manufacturing operations, the manufacturing process commences with the first operation or stage of production in the series and does not end until the completion of the final product in the last operation or stage of production in the series. ***

(2) 'Assembling process' means the production of an article of tangible personal property, whether the article is a finished product or an article for use in the process of manufacturing or assembling a different article of tangible personal property, by the combination of existing materials in a manner commonly regarded as assembling that results in an article or material of a different form, use, or name." 35 ILCS 105/3—50 (West 1992).

■ In analyzing these provisions, the *Van's Material* court applied the following principles of statutory construction:

"[T]his court has long held that '[t]axing statutes are to be strictly construed. Their language is not to be extended or enlarged by implication, beyond its clear import. In cases of doubt they are construed most strongly against the government and in favor of the taxpayer.' [Citations.]

In strictly construing the similar provisions of the Use Tax Act and ROTA, the primary rule is to ascertain and give effect to the intention of the legislature, and that inquiry must begin with the language of the statute. [Citations.] In addition to considering the language of the statute, a court may properly consider the purpose to be attained by the law, the necessity for the law and the evils sought to be remedied. [Citations.] The legislative history or background of a statute (*e.g.*, legislative committee reports as well as House and Senate floor debates) may be an instructive resource in ascertaining the legislative intent. [Citation.] We also note that, generally, administrative interpretations of a statute promulgated by the agency charged with the administration and enforcement of the statute receive some respect and deference from the courts, but they are clearly not binding on the courts. [Citations.] In addition, this court has noted that '[a]dministrative rules can neither limit nor extend the scope of a statute.' [Citation.]" *Van's Material*, 131 Ill. 2d at 202-03, 545 N.E.2d at 698-99.

■ The *Van's Material* court also discussed exemptions:

" 'A person claiming an exemption from taxation has the burden of proving clearly that he comes within the statutory exemption. Such exemptions are to be strictly construed, and doubts concern-

ing the applicability of the exemptions will be resolved in favor of taxation.' " *Van's Material*, 131 Ill. 2d at 216, 545 N.E.2d at 705, quoting *United Air Lines, Inc. v. Johnson*, 84 Ill. 2d 446, 455, 419 N.E.2d 899 (1981).

Applying these principles, the *Van's Material* court concluded that the three phrases forming the "gist" of the manufacturing exemption are: (1) "tangible personal property," (2) "process of manufacturing or assembling," and (3) "primarily." *Van's Material*, 131 Ill. 2d at 203, 545 N.E.2d at 698. The court then determined that the taxpayer had carried its burden of showing that a ready-mix concrete truck fell within the exemption. Specifically, the court held that the truck, in mixing sand, limestone, water, and cement into concrete, was a machine primarily used in the manufacture of tangible personal property. *Van's Material*, 131 Ill. 2d at 216-17, 545 N.E.2d at 704-05. Recently, the second district of this court also focused on these three terms in determining whether a slip form paver used to smooth concrete in a roadway was subject to the use tax. *Madden*, 272 Ill. App. 3d at 216, 651 N.E.2d at 220. While the taxpayer relied heavily on *Van's Material*, the *Madden* court found that, unlike the ready-mix truck used in the production of concrete (which was tangible personal property), the slip form paver was used in the production of a roadway (which was real property). *Madden*, 272 Ill. App. 3d at 218, 651 N.E.2d at 221-22. Thus, as the slip form paver was not used in the manufacturing or assembling of tangible personal property, the paver did not qualify under the manufacturing exemption to the Use Tax Act. *Madden*, 272 Ill. App. 3d at 219, 651 N.E.2d at 222.

As in *Van's Material* and *Madden*, we must focus in the present case on the terms "tangible personal property," "process of manufacturing or assembling," and "primarily" in determining whether the trays used by Zenith fall within the manufacturing and assembling exemption. The Department argues that the exemption is inapplicable because the trays are not used in the manufacture of CRTs at the Melrose plant nor are they used in the assembly of television sets at the Springfield plant. Instead, the Department argues, the primary use of the trays is "to transport the separately marketable and marketed" CRTs. The Department points out that, during the audit period, the CRTs produced at the Melrose plant were increasingly being sold to outside entities. The Department also asserts that Zenith's portrayal of itself as solely a manufacturer of television sets is wholly inconsistent with the evidence in the record. Where the trays are primarily used for, and essential to, only the transportation of completed CRTs from the Melrose plant to various

receiving plants, the Department argues, the trays are not equipment primarily used in a manufacturing or assembling process.

Zenith responds that the trial court properly held that the tray sets were equipment used in the manufacture of television sets, and argues that, contrary to the Department's argument, its production of television sets involves manufacturing at both its Melrose plant and Springfield plant. Zenith points to the statutory language that "[i]n relation to a recognized integrated business composed of a series of operations that collectively constitute manufacturing, or individually constitute manufacturing operations, the manufacturing process commences with the first operation or stage of production in the series and does not end until the completion of the final product in the last operation or stage of production in the series." 35 ILCS 105/3—50 (West 1992). Zenith argues that, where it produces television sets through a "series of operations" that "collectively constitute manufacturing," the Department cannot seriously claim that the collective integrated operations at the Melrose and Springfield plants do not constitute the manufacture of television sets. Zenith also argues that the Department's reliance on its regulation denying exemption to equipment used to "transport work in process, or semi-finished goods, between plants" (86 Ill. Adm. Code § 130.330(d)(4)(F) (1985)) is defeated by the administrative law judge's finding of fact that "[t]he tray sets are used by Zenith *to protect* the CRT from damage during transportation that would render *** [the] CRT unacceptable to worthless." (Emphasis added). As the trial court held, Zenith argues, the record clearly establishes that the trays were specifically designed for the "protection" of CRTs and, unlike a vehicle, which may constitute equipment used "to transport," the trays are immobile, making the Department's finding that the trays were used to transport the CRTs against the manifest weight of the evidence.

■ After consideration of the parties' arguments, as well as a close reading of the pertinent statutory provisions, the Department's regulations, relevant case law, and the trial court's 17-page memorandum decision, we conclude, as the trial court did, that the tray sets were primarily used in an exempt manner. According to the administrative law judge's findings of fact, a majority of the CRTs produced at the Melrose plant were sent to Springfield during the audit period. The administrative law judge also found that the primary purpose of the tray sets was to "protect" the CRTs, as they are extremely fragile and have a tendency to implode. Ten to twelve truckloads of CRTs were sent to Springfield daily during the audit period. Those CRTs then became part of television sets, which the Department does not dispute are tangible personal property. Accord-

ing to the relevant statute, use tax does not apply to equipment used primarily in the process of manufacturing or assembling tangible personal property. 35 ILCS 105/3—50 (West 1992). Also according to the statute, "the manufacturing process commences with the first operation or stage of production in the series and does not end until the completion of the final product in the last operation or stage of production in the series." 35 ILCS 105/3—50 (West 1992). Applying this language to the factual situation before us, we can only conclude, as the trial court did, that the trays were primarily used in a manufacturing or assembling process.

The Department, however, also relies heavily on its own rules and regulations in support of its argument that the trays were not primarily used in an exempt manner. Specifically, the Department points to the following language of the Administrative Code:

"By way of illustration and not limitation, the following activities will generally not be considered to be manufacturing:

\* \* \*

E) The use of machinery or equipment to store, convey, handle or transport finished articles of tangible personal property to be sold or leased after completion of the production cycle;

F) The use of machinery or equipment to transport work in process, or semi-finished goods, between plants." 86 Ill. Adm. Code § 130.330(d)(4)(E), (d)(4)(F) (1985).

We agree with the trial court, however, that these regulations do not have the effect of taking the tray sets outside the use tax manufacturing and assembling exemption. First, subsection (E) is inapplicable because the tray sets going to the Springfield plant were not storing, conveying, handling, or transporting finished articles to be sold or leased. Instead, the tray sets going to Springfield contained CRTs that would undergo further manufacturing before becoming part of television sets. We also find persuasive the trial court's reasoning as to why subsection (F) is inapplicable. The trial court explained:

"The record clearly establishes the trays were specifically designed for the protection of CRTs. Taxpayer [Zenith] was the first manufacturer to design plastic trays for this purpose and they are now an industry standard. The ALJ expressly found the trays 'are used by [Taxpayer] to protect the CRT from damage during transportation.' This finding does not equate to the trays being used to transport the CRTs as the trays themselves are immobile. The word 'transport,' as commonly used, means to carry from one place to another, and is generally accomplished by means of a vehicle. See, Webster's Third New International Dictionary (1986). The finding of the Director, affirming the finding of the ALJ, that

the trays were used to transport the finished CRTs, was against the manifest weight of the evidence."

Like the trial court, we also conclude that, while the trucks transporting the CRTs from the Melrose plant to the Springfield plant would not have been exempt, the tray sets, themselves immobile, had the primary purpose of protecting the CRTs and that purpose was essential to the manufacturing or assembling process of television sets.

Finally, we find it noteworthy that the supreme court in *Van's Material* expressly refused to apply some of the Department's regulations. Specifically, the court held that "[t]he Department's rules and regulations limiting manufacturing to a fixed location and attempting to define 'commonly regarded' by its own limited definition are unduly restrictive in the light of the statutory language." *Van's Material*, 131 Ill. 2d at 209, 545 N.E.2d at 702. In so holding, the court stressed that it has long held that administrative rules may not limit the scope of a statute. *Van's Material*, 131 Ill. 2d at 209, 545 N.E.2d at 702. Moreover, the court stated that "[e]ven if the regulations were not determined to be unduly restrictive, we are not bound by the Department's interpretations of the statute." *Van's Material*, 131 Ill. 2d at 209-10, 545 N.E.2d at 702.

Turning back to the present case, we conclude, as the trial court did, that the Department's interpretation of the manufacturing and assembling exemption as it related to the tray sets used by Zenith to protect CRTs was against the manifest weight of the evidence. Put another way, we hold, as the trial court did, that Zenith has carried its burden of proving that the tray sets were exempt from taxation under the Use Tax Act (35 ILCS 105/1 *et seq.* (West 1992)) and the ROTA (35 ILCS 120/1 *et seq.* (West 1992)) as equipment used primarily in the manufacturing or assembling of tangible personal property.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WOLFSON, P.J., and BURKE, J., concur.