RICHARD'S TIRE COMPANY, Plaintiff-Appellee, v. KENNETH E. ZEHN-DER, as Director of Revenue, *et al.*, Defendants-Appellants.

Second District   No. 2—96—1406

Opinion filed March 6, 1998.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Brian F. Barov and John P. Schmidt, Assistant Attorneys General, of counsel), for appellants.

Norman H. Racine, of Sycamore, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendants, the Department of Revenue (the Department) and Kenneth E. Zehnder, Director of Revenue (Zehnder), appeal from an order of the trial court upon administrative review reversing defendants' decision that plaintiff, Richard's Tire Company, is liable to pay taxes on certain machinery and equipment plaintiff used in the process of manufacturing retread tires. The trial court held that defendants' final administrative decision was against the manifest weight of the evidence. Defendants raise two issues on appeal: (1) whether plaintiff's failure to name the Department as defendant deprived the trial court of jurisdiction, and (2) whether the manufacturing and assembling machinery and equipment exemption in section 3—5(18) of the Use Tax Act (35 ILCS 105/3—5(18) (West 1996)) applied to the machinery and equipment used by plaintiff in producing retread tires. We affirm the order of the trial court.

The administrative hearing record, including Zehnder's decision, reveals the following salient facts. Plaintiff was engaged in the business of retreading motor vehicle tires from 1966 until 1992, when substantially all of its assets were sold and the corporation dissolved. In December 1992 the Department issued a notice of tax liability to plaintiff. The notice stated that plaintiff owed $11,449, which represented unpaid use tax due, plus penalties and interest for the period between July 1989 and December 1991. The Department assessed the use tax on machinery that plaintiff purchased during this period and used to retread tires. Plaintiff filed a timely protest of this assessment and contended that the statutory exemption for manufacturing and assembling machinery and equipment (see 35 ILCS 105/3—5(18) (West 1996)) applied to the machinery.

In October 1994 the Department held an administrative hearing before Administrative Law Judge (ALJ) Alan Osheff. The Department contended that (1) plaintiff's assets were tangible personal property purchased at retail from a retailer; (2) no retailer's occupation tax had been paid to the sellers; and (3) use tax should be imposed. ALJ Osheff allowed into evidence the notice of tax liability and certificate of mailing.

The Department's sole witness was David Wheet, an auditor employed by the Department. Wheet testified that, in reviewing plaintiff's records, he found that plaintiff had purchased certain items of machinery and equipment during the audit period for which no use tax had been paid. Wheet described the process of retreading tires: a customer would bring in a tire casing, and the machines that the

Department assessed would be utilized in the process of retreading the casing; when the process was complete, the tire would be returned to the customer. Wheet determined that no sale or lease occurred in this process, and on that basis Wheet concluded that the machinery was taxable. Upon the conclusion of the cross-examination of Wheet, the Department rested its case.

Testifying on behalf of plaintiff was Richard Weagley, plaintiff's former president, chief executive officer, secretary-treasurer, and sole stockholder throughout the relevant period. Weagley testified that the machinery and equipment at issue included expandable chuck conversion kits, compressors, a tank, a twin line conversion kit, a tread kit, a buffer, and a builder. All of these items were used to produce a retread tire. The finished products were sold to individual customers or dealers who resold such tires. Weagley explained the pricing structure of selling retreaded tires. Sales tax was not charged to customers who possessed an interstate carrier exemption; sales tax would be charged to end users who were not interstate carriers.

Weagley also explained the retreading process. Tire casings are first procured by plaintiff, a customer, or some other third party; then the casings are inspected. If the tire casing is unsuitable for retreading, it is rejected. If the tire casing is suitable for retreading, it will then be cut down, reshaped, and resurfaced with a buffer. Damaged areas are skived and the resulting holes are refilled with rubber compound. The refurbished casing is then cleaned and, if necessary, repaired. Resized and reconditioned, the casing is next placed on a machine called a "builder," where strips of manufactured cushion gum and tread rubber are cut to size and applied to the casing along with bonding agents. Next, a United States Department of Transportation assigned number is embossed on the tire to identify it as a retread and to show its place of origin. The tire is next mounted on a rim or ring, enclosed in an "envelope," and pressurized. A number of mounted pressurized tires are then inserted into a large curing chamber where, through the application of heat and a pressure differential, a chemical change takes place resulting in the vulcanization of the cushion gum and the integration of the tread rubber with the casing.

During Weagley's examination, plaintiff and the Department stipulated that a total of $24,036, representing certain leasehold improvements, should not have been assessed and, therefore, should be deleted from plaintiff's tax liability.

Plaintiff also introduced into evidence correspondence from 1985 between Bandag, Inc. (Bandag), and the Department. Plaintiff was a franchise of Bandag, which engaged in the tire retreading business.

In a May 30, 1985, letter from Bandag to the Department, Bandag requested a written ruling that the purchase or lease from it by its franchisees of machinery and equipment for use in its retreading process was exempt from taxation under the manufacturing and assembling machinery and equipment exemption. Bandag's letter informed the Department that its franchisees engage in two types of transactions: (1) when customers supply their own tire casings, or (2) when the franchisee supplies the tire casing. A Department staff attorney initially replied that the exemption would not apply; however, the same attorney responded nine days later, reversing the Department's earlier ruling, stating that the previous letter should be disregarded and that the Department ruled that Bandag's machinery did qualify for the exemption. In ruling that the exemption applied, the attorney cited to a private letter ruling issued January 25, 1985, by the Department, stating that "machinery used in the retreading of tires does qualify for the manufacturing machinery and equipment exemption."

In his recommendation for disposition, ALJ Osheff determined that the assets at issue were manufacturing and assembling machinery and equipment used primarily in the process of manufacturing retread tires for wholesale or retail sale. He summarized as follows:

> "[T]he evidence reveals that the process involved was one of manufacturing and the taxpayer in fact sold a retreaded tire to his customer. In my opinion a sale occurred in those instances where the customer had supplied a casing since the casing was only an ingredient that became incorporated in the newly transferred product. A substantial ingredient that was supplied by the taxpayer was the rubber and the product received by the customer was not the same as received by the taxpayer."

ALJ Osheff recommended to Zehnder that the assessment be canceled.

In his final administrative decision, Zehnder declined to follow ALJ Osheff's recommended disposition. Zehnder acknowledged that "the process of producing retread tires is obviously manufacturing." However, Zehnder defined the issue as "whether the transactions which take place between [plaintiff] and its customers in situations where the customer supplies the casing, are in actuality a service or a retail (sometimes wholesale) sale." Zehnder noted that the exemption applies only if the machinery and equipment in question are used to manufacture personal property for wholesale, retail sale, or lease. Zehnder relied upon a Department regulation codified at 86 Ill. Adm. Code § 130.2015 (1996), which states, *inter alia*, that the

retreading of tires would not be considered a product sale subject to the retailer's occupation tax. Instead, Zehnder considered the retreading of tires a service subject to the service occupation tax.

Zehnder's decision also disagreed with ALJ Osheff's conclusion that the product the customer ultimately received was different from the product brought in by the customer. Zehnder stated that the customer brought in a worn tire, and plaintiff returned a reconditioned tire to the customer. He further stated that, under ALJ Osheff's logic, "persons who bring their shoes to be resoled and/or reheeled, buffed and shined, are in fact buying new shoes from the corner cobbler."

Zehnder affirmed the auditor's notice of tax liability, and the Department issued the final assessment to plaintiff on December 11, 1995. The final assessment stated that plaintiff owed $14,077.81 in use tax, interest, and penalties. Both parties agree that the final assessment failed to take into account the Department's stipulation at the hearing that $24,036 worth of leasehold improvements had been erroneously assessed.

Plaintiff filed a complaint against Zehnder, in his capacity as Director of the Department of Revenue, in administrative review on January 5, 1996, contesting the Department's final assessment. Zehnder filed his notice of appearance on February 8, 1996. On April 8, 1996, pursuant to section 3—108(b) of the Administrative Review Law (735 ILCS 5/3—108(b) (West 1996)), plaintiff moved for an order of default against Zehnder for failure to file an answer, a motion the trial court later denied. On April 10, 1996, Zehnder filed a motion to dismiss the complaint, alleging that, pursuant to section 3—107(a) of the Administrative Review Law (735 ILCS 5/3—107(a) (West 1996)), the failure of plaintiff to name the Department as a party and serve it with summons mandated the dismissal of the complaint.

On April 15, 1996, plaintiff filed a motion for leave to amend its complaint to add the Department as a party. Zehnder responded to the motion and requested that the trial court deny plaintiff's motion and grant his motion to dismiss. On July 1, 1996, the trial court entered an order dismissing plaintiff's complaint without prejudice and granting plaintiff leave to amend the complaint to add the Department as a defendant. Plaintiff filed its amended complaint on July 3, 1996.

At a hearing conducted on October 4, 1996, plaintiff and defendants agreed that the $24,036 worth of leasehold improvements was erroneously assessed. In an order dated October 4, 1996, the trial court reversed the final administrative decision to the extent that $24,036 was improperly assessed to plaintiff and took under ad-

visement the issue of whether the remainder of the assessment was exempt.

On October 30, 1996, the trial court found that the recommendation by ALJ Osheff was correct and entered an order reversing the Department's decision on the ground that it was "far beyond the manifest weight of the evidence." Zehnder and the Department filed a timely notice of appeal.

■ Defendants' first issue on appeal is whether the failure of plaintiff to name the Department as a party in its original complaint for administrative review mandates the dismissal of plaintiff's complaint. See 735 ILCS 5/3—107(a) (West 1996); *McGaughy v. Illinois Human Rights Comm'n*, 165 Ill. 2d 1 (1995); *Lockett v. Chicago Police Board*, 133 Ill. 2d 349 (1990). Section 3—107(a) of the Administrative Review Law provides, in pertinent part, as follows:

> "[I]n any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants." 735 ILCS 3—107(a) (West 1996).

Since *McGaughy* and *Lockett* were decided, our legislature has amended section 3—107(a) of the Administrative Review Law. Section 3—107 of the law, as amended, provides, *inter alia*:

> "[I]n any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants. No action for administrative review shall be dismissed for lack of jurisdiction based upon the failure to name an employee, agent, or member, who acted in his or her official capacity, of an administrative agency, board, committee, or government entity, where the administrative agency, board, committee, or government entity, has been named as a defendant as provided in this Section. *Naming the director or agency head, in his or her official capacity, shall be deemed to include as defendant the administrative agency, board, committee, or government entity that the named defendants direct or head.* No action for administrative review shall be dismissed for lack of jurisdiction based upon the failure to name an administrative agency, board, committee, or government entity, where the director or agency head, in his or her official capacity, has been named as a defendant as provided in this Section." (Emphasis added.) 735 ILCS Ann. 5/3—107(a) (Smith-Hurd Supp. 1997).

Therefore, we must first address whether the amended version of the statute applies to the pending appeal. Should the amended version

apply, plaintiff's failure to name the Department is not fatal to its cause of action.

In *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282 (1996), our supreme court discussed the various analyses reviewing courts have applied in determining whether a statutory amendment applied to an existing controversy on appeal. *Armstead* enunciated the rule that "a reviewing court should simply apply the law as it exists at the time of the appeal, unless doing so would interfere with a vested right." *Armstead*, 171 Ill. 2d at 290; see also *Johnson v. Edgar*, 176 Ill. 2d 499, 518-19 (1997); *Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund*, 293 Ill. App. 3d 1070, 1074 (1997). Under the due process clause of our constitution (Ill. Const. 1970, art. I, § 2), vested rights are interests that are protected from legislative interference.

Plaintiff cites *Martin v. Department of Professional Regulation*, 284 Ill. App. 3d 591 (1996), in which the reviewing court applied the then newly amended 1994 version of section 3—107(a) to that case on appeal. *Martin* held that vested rights were not impaired by allowing the plaintiff to name a necessary party pursuant to the amendment. *Martin*, 284 Ill. App. 3d at 596.

We find persuasive *Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund*, 293 Ill. App. 3d 1070 (1997). In *Rhoads*, the plaintiff was appointed the chief of police of Calumet City in 1988 and subsequently accepted into the police officer's pension fund. In 1993 Rhoads was terminated from his position after applying for a line-of-duty disability pension. In January 1995 after a hearing, the pension board granted Rhoads a not-on-duty disability pension. Rhoads appealed to the circuit court, which reversed the pension board's decision. The pension board appealed, alleging that Rhoads' failure to name the individual pension board trustees as defendants deprived the circuit court of jurisdiction. The Appellate Court, First District, disagreed, stating that the amended version of section 3—107(a) (735 ILCS 5/3—107(a) (West Supp. 1997)) no longer requires the joinder of individual pension board trustees to invoke jurisdiction under administrative review. After a brief application of the principles enunciated in *Armstead* and *Martin*, the reviewing court concluded that the 1997 amendment to section 3—107(a) did not interfere with a vested right. The *Rhoads* court concluded that Rhoads' failure to name the individual defendants was not fatal to his cause of action.

Defendants in the present case contend that their vested right is the statutory 35-day limitations period during which plaintiff was allowed to name the Department as a defendant. However, defendants

have no vested right in the continuance of a law. See *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 215 (1994). The legislature has an immutable right to amend a statute. *Envirite*, 158 Ill. 2d at 215. Therefore, the state, by not specifying prospective application, implicitly gave up any "vested rights." Defendants cite *Sepmeyer v. Holman*, 162 Ill. 2d 249 (1994), for the proposition that the expiration of a statute of limitations creates a vested right. Defendant's reliance on *Sepmeyer* is misplaced, as plaintiff here is not seeking to revive a cause of action previously time-barred by the statute of limitations. No such statute is involved in the present case. After reviewing the record, we determine that there was no unconditional exemption in the 35-day limit such that it could be equated with a property interest. See *Martin*, 284 Ill. App. 3d at 596.

■ Accordingly, we review plaintiff's complaint in light of section 3—107(a) as amended. Therefore, pursuant to *Armstead*, *Martin*, and *Rhoads*, plaintiff's failure to name the Department as a defendant did not divest the trial court of jurisdiction under the Administrative Review Law and is not fatal to its cause of action.

We next consider our standard of review. Our standard of review for a final administrative decision is governed by the Administrative Review Law. 735 ILCS 5/3—101 *et seq.* (West 1996). The Administrative Review Law provides that our review encompasses all questions of law and fact presented by the entire record. 735 ILCS 5/3—110 (West 1996); *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 148 (1997). Our role is to review the administrative decision, not the trial court's determination. *Board of Education of Round Lake Area Schools v. State Board of Education*, 292 Ill. App. 3d 101, 109 (1997). The statute further mandates that an administrative agency's factual findings are "held to be prima facie true and correct." 735 ILCS 5/3—110 (West 1996); see also *Board of Education of Round Lake Area Schools*, 292 Ill. App. 3d at 108.

■ However, an administrative agency's determinations of law are not accorded the same deference as its findings of fact. *Oregon Community Unit School District No. 220 v. Property Tax Appeal Board*, 285 Ill. App. 3d 170, 175 (1996), *leave to appeal allowed*, 172 Ill. 2d 554 (1997). The interpretation of a statute is a question of law. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). An administrative agency's finding on a question of law or an interpretation of a statute, including a statute it is charged with administering, is not binding upon this court. *Branson*, 168 Ill. 2d at 254. Our review of legal issues is *de novo*. *Du Page County Board of Review v. Property Tax Appeal Board*, 284 Ill. App. 3d 649, 653 (1996). We have

reviewed the record, including the transcript of the hearing and Zehnder's final administrative decision, and note that the material facts are not in dispute, only the legal conclusions drawn therefrom. Accordingly, a *de novo* standard of review is appropriate.

■ Defendants' second issue on appeal is whether plaintiff's machinery is exempt from taxation under the manufacturing and assembling machinery and equipment exemption to the Use Tax Act (35 ILCS 105/3—5(18) (West 1996)). In determining whether the machinery is exempt, we must follow the analysis our supreme court enunciated in *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196 (1989), a case involving the same statutory provision as the present case. In *Van's Material*, the court engaged in a two-part analysis: it analyzed the exemption itself and then determined whether the exemption applied to the case. See *Van's Material*, 131 Ill. 2d at 201; see also *Zenith Electronics Corp. v. Department of Revenue*, 293 Ill. App. 3d 651 (1997); *Thomas M. Madden & Co. v. Department of Revenue*, 272 Ill. App. 3d 212 (1995).

■ Illinois' use tax is imposed "upon the privilege of using in this State tangible personal property purchased at retail from a retailer." 35 ILCS 105/3 (West 1996). Plaintiff has maintained throughout the pendency of the proceedings that its machinery is exempt from taxation because it falls within the manufacturing exemption to the Use Tax Act. See 35 ILCS 105/3—5(18) (West 1996). Under the provisions of section 3—5 of the Use Tax Act, certain tangible personal property may be exempt from taxation. The exemption statute at issue in the present case, section 3—5(18), states that the following is exempt from tax imposed by the Use Tax Act:

> "Manufacturing and assembling machinery and equipment used primarily in the process of manufacturing or assembling tangible personal property for wholesale or retail sale or lease, whether that sale or lease is made directly by the manufacturer or by some other person, whether the materials used in the process are owned by the manufacturer or some other person, or whether that sale or lease is made apart from or as an incident to the seller's engaging in the service occupation of producing machines *** or other similar items of no commercial value on special order for a particular purchaser." 35 ILCS 105/3—5(18) (West 1996).

Defendants argue that this exemption does not pertain to plaintiff's equipment because plaintiff is engaged in a service occupation, contending that plaintiff is not manufacturing personal property for wholesale, retail sale, or lease.

■ The preeminent goal of a court construing a statute is to give effect to the legislature's intent. *Jahn v. Troy Fire Protection District*,

163 Ill. 2d 275, 282 (1994). Statutory language is the best indicator of this intent, and where such language reveals the legislative drafters' intent, we may not resort to other aids for construction. *People v. Brooks*, 158 Ill. 2d 260, 264 (1994). Statutes granting tax exemptions are to be construed strictly in favor of the taxing body and against exemption, and the burden of proof rests with the party claiming the exemption. *Madden*, 272 Ill. App. 3d at 215-16.

In its examination of the statutory exemption, the court in *Van's Material* focused on three words or phrases forming "the gist" of the statute: (1) "tangible personal property"; (2) "process of the manufacturing or assembling"; and (3) "primarily." *Van's Material*, 131 Ill. 2d at 203. The *Van's Material* court determined that the taxpayer met the burden of establishing that its ready-mix concrete truck, in mixing sand, limestone, water, and cement into concrete, was a machine primarily used in the manufacture of tangible personal property and, therefore, entitled to benefit from the exemption provisions. *Van's Material*, 131 Ill. 2d at 216-17. In its construction of the statute, this court in *Madden* determined that a slip form paver used to smooth concrete in a roadway was not used in the manufacturing or assembling of tangible personal property and thus did not qualify for a manufacturing exemption. *Madden*, 272 Ill. App. 3d at 219. Recently the Appellate Court, First District, considered the same statutory provision as the one at issue here. See *Zenith Electronics Corp. v. Department of Revenue*, 293 Ill. App. 3d 651. The *Zenith Electronics* court held that tray sets used by Zenith Electronics Corporation, a manufacturer of cathode ray tubes, to protect the tubes during transportation to other plants for manufacture into television sets were statutorily exempt from use tax. *Zenith Electronics*, 293 Ill. App. 3d at 653-54.

For our analysis, neither party disputes that plaintiff's machinery assessed by the Department is tangible personal property purchased out of state for use in Illinois. Additionally, neither party disputes, and Zehnder acknowledges in his final administrative decision, that "the process of producing retread tires is obviously manufacturing." The record is silent as to defendants' position regarding whether plaintiff's machinery is "primarily" used in the process of manufacturing. However, our review of the record leads us to clearly conclude that plaintiff's machinery is primarily used in the process of manufacturing retread tires.

The dispute between the parties is seemingly based upon the interpretation of the final portion of the manufacturing exemption, that is, the portion that reads "for wholesale or retail sale or lease" (35 ILCS 105/3—5(18) (West 1996)). Zehnder considered the retreading

of tires as a service. Defendants rely heavily on the Department's own rules and regulations in support of their argument that plaintiff's business is a service occupation. See 86 Ill. Adm. Code § 130.2015 (1996) (stating, *inter alia*, that the retreading of tires would not be considered a product sale subject to the retailer's occupation tax). However, our courts have "long held that administrative rules may not limit the scope of a statute." *Van's Material*, 131 Ill. 2d at 209, citing *Du-Mont Ventilating Co. v. Department of Revenue*, 73 Ill. 2d 243, 247-48 (1978). Furthermore, "[e]ven if the regulations were not determined to be unduly restrictive, we are not bound by the Department's interpretations of the statute." *Van's Material*, 131 Ill. 2d at 209-10.

■ We decline to look to the Department's administrative rules and regulations to determine whether plaintiff's business is a service or a retail occupation. Rather, we are guided by our supreme court, which, in *Velten & Pulver, Inc. v. Department of Revenue*, 29 Ill. 2d 524 (1963), first synthesized into a rule the standards for determining whether a business is a service or a retail occupation:

> "[I]f the article sold is the substance of the transaction and the service rendered is merely incidental thereto and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in retail selling." *Velten & Pulver*, 29 Ill. 2d at 529-30.

This standard is well established in Illinois jurisprudence. See, *e.g., Colorcraft Corp. v. Department of Revenue*, 112 Ill. 2d 473, 481-82 (1986); *Rodman v. Department of Revenue*, 51 Ill. 2d 314, 317-18 (1972); *Spagat v. Mahin*, 50 Ill. 2d 183, 189 (1971); *New Yorker Magazine, Inc. v. Department of Revenue*, 187 Ill. App. 3d 931, 937-38 (1989).

■ Defendants argue that the exemption should not apply because putting new tread on a tire brought in by a customer constitutes the provision of a service. They contend that plaintiff's machinery was used to provide a repair service, rather than to manufacture tangible personal property for wholesale or retail sale or lease. They argue that, because plaintiff's customers supplied the tire casing, the provision of materials by plaintiff, such as new tread and cushion gum, was merely incidental to this purpose. Plaintiff counters that the substance of the transaction is the purchase of a retread tire. The retread tire is composed of a casing, cushion gum, bonding agents, and tread rubber with a unique tread pattern. Both parties agree that the service rendered is merely incidental thereto, and clearly it is an inseparable part of the transfer to the purchaser of the retread tire. We agree with plaintiff and hold that plaintiff is engaged in retail selling.

We believe that the source of the tire casing is irrelevant in our determination that plaintiff's machinery is exempt from taxation under the Use Tax Act. See 35 ILCS 105/3—5(18) (West 1996) (providing that the exemption may apply "whether the materials used in the process are owned by the manufacturer or some other person"). Our analysis is not affected simply because some customers provide tire casings. Indeed, it cannot be, because then the alternative would also have to be considered, that is, whether plaintiff would be entitled to the benefit of the exemption if plaintiff supplied all of its own tire casings. We decline to adopt such a limited view in interpreting the statute at issue.

Based on our review of the record, we conclude that defendants' interpretation of the manufacturing and assembling machinery and equipment exemption was against the manifest weight of the evidence. We hold that plaintiff met the burden of proving that its machinery was exempt from taxation under the Use Tax Act (35 ILCS 105/1 *et seq.* (West 1996)) as machinery used primarily in the manufacturing or assembling of tangible personal property.

Our determination that defendants' final administrative decision was against the manifest weight of the evidence obviates the need to address defendants' other arguments on appeal.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.