TYSON FOODS, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—98—1476

Opinion filed February 8, 2000, *nunc pro tunc* December 28, 1999.

Roger L. Price, Fred M. Ackerson, and Marlene A. Smith, all of D'Ancona & Pflaum, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Erik G. Light, Assistant Attorney General, of counsel), for appellees.

JUSTICE McBRIDE delivered the opinion of the court:

Defendants, the Illinois Department of Revenue and Douglas Whitley, the Director of Revenue (hereafter collectively referred to as the Department), issued a notice of deficiency to plaintiff Tyson Foods, Inc. (Tyson), assessing Illinois corporate income taxes for tax years ending March 29, 1986, and April 2, 1988. Two actions relating to the deficiencies, one pursuant to the State Officers and Employees Money Disposition Act (30 ILCS 230/1 *et seq.* (West 1996)) and another pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)) were consolidated before the circuit court. The court, in separate orders, entered judgment in favor of defendants in both cases. Tyson appeals, contending that the circuit court erred in finding that Tyson's activities in Illinois permitted the state to impose an income tax on Tyson, erred by failing to apply proper standards in granting summary judgment in one of the actions, and erred in failing to abate penalties against Tyson.

Tyson is an Arkansas-based corporation whose primary business is producing and selling poultry-based food products. Tyson did not file corporate income tax returns in Illinois for the tax years ending March 29, 1986, and April 2, 1988. In 1990, the Department issued a notice of deficiency to Tyson assessing corporate income tax of $9,827 for the tax year that ended March 29, 1986, and $46,992 for the tax year that ended April 2, 1988, along with penalties of $7,722 and $31,280 for the respective years.

Tyson challenged the notice of deficiency relating to 1986 by filing a complaint in the circuit court pursuant to the State Officers and Employees Money Disposition Act. 30 ILCS 230/1 *et seq.* (West 1996). Prior to filing, Tyson paid the deficiency for 1986 to the Department under protest. The payment of $22,052.84 represented $17,549.00 of tax and penalties and $4,503.84 of interest.

Tyson also challenged the notice of deficiency for 1988 by filing

with the Department a protest and request for an administrative hearing. At the administrative hearing, the parties agreed to a stipulation of facts. Following the hearing, an administrative law judge recommended that the notice of deficiency for the 1988 tax year be upheld in its entirety. The Department adopted the recommendation of the administrative law judge.

Tyson then filed a complaint for administrative review in the circuit court. Tyson's actions before the circuit court under the State Officers and Employees Money Disposition Act and Administrative Review Law were consolidated. The circuit court noted that, despite the consolidation, separate judgments would be entered on the two cases.

■ Public Law 86—272 (73 Stat. 555, 15 U.S.C. § 381 (1988)) (the Law), under which Tyson sought protection from taxation, confers immunity from state income taxes on companies whose "only business activities" in a state consist of "solicitation of orders" for interstate sales. See *Wisconsin Department of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 223, 120 L. Ed. 2d 174, 186, 112 S. Ct. 2447, 2453 (1992); 15 U.S.C. § 381(a) (1988). Subsection (c) of section 381 of the Law states that, for purposes of imposing an income tax, a person shall not be considered to have engaged in business activities within a state during any taxable year by reason of the maintenance of an office in the state by one or more independent contractors whose activities on behalf of such person consist solely of making sales or soliciting orders for sales. 15 U.S.C. § 381(c) (1988).

The facts, as stipulated to by the parties before the circuit court, are as follows. Tyson was an Arkansas-based corporation whose primary business was producing and selling poultry-based food products. Tyson processed its poultry products at 24 locations in 6 states and maintained 6 frozen foods distribution centers. None of these processing facilities or distribution centers were located in Illinois.

Sales of Tyson products were solicited by wholesale food brokers who were independent contractors with respect to Tyson. The wholesale customers placed their orders with the independent contractor food brokers, who then forwarded the orders to Tyson's corporate headquarters for acceptance.

Tyson employed two regional sales managers who resided in Illinois. These regional sales managers oversaw Tyson's relationship with the wholesale food brokers. Their territories covered parts of Illinois, Wisconsin, Michigan, and Ohio. The parties agree that the activities of the wholesale food brokers and Tyson's regional sales managers constituted "solicitation" within the meaning of Public Law 86—272 and thus did not constitute a basis for Tyson to be subject to

Illinois' income tax. Aside from the regional sales managers, Tyson did not employ any persons within Illinois. Nor did Tyson maintain any bank accounts or own any real estate within Illinois.

Tyson, through its corporate headquarters, arranged delivery of its products to Illinois customers by truck from points outside the state. Tyson did not maintain a garage, transportation center, or other repair or storage facility for its trucks within Illinois. Tyson registered its fleet of trucks with the Illinois Secretary of State in 1984. The registration of the trucks in Illinois was under the terms of the International Registration Plan (IRP), as adopted by the Illinois Secretary of State.

On February 13, 1984, Tyson entered into an office lease with landlord Dick Lukin, Inc., for an office located at 540 Frontage Road, Northfield, Illinois. The term of the lease was one year and the annual rent was $500. The lease was renewed annually and was in effect during the relevant times for purposes of the issues at hand. In February 1984, a telephone line listed under Tyson's name was connected to the leased office premises and remained in operation during the times relevant to this appeal. The number was listed in Tyson's name in the telephone directory but was not referred to in advertisements or used for the solicitation of business by Tyson. If the Tyson phone number was called, the phone was answered by an employee of Dick Lukin, Inc., if such an employee was in the immediate vicinity. When the phone was answered, callers were referred to the Tyson phone number at corporate headquarters in Arkansas. Tyson did not otherwise take possession of or occupy the leased premises, did not own the property located at the office, and did not locate any employees at the office.

Tyson filed income tax returns in the seven states in which it had fixed assets. Sales to Illinois customers were included in the sales factor of the apportionment formula of the state from which any goods were shipped.

Illinois Secretary of State informational booklets regarding IRP applications and instructions for 1987 and 1988 were included with the stipulation of facts as exhibits. The IRP, according to the exhibits, is "a method of licensing truck and bus fleets apportionately among two or more member jurisdictions." A truck registered through the IRP need only have one registration plate and one cab card. Tyson chose Illinois as its base jurisdiction for IRP registration. A base jurisdiction, according to the exhibits, shall be "the jurisdiction where the registrant has an established place of business, where mileage is accrued by the fleet, and where operational records of such fleet are maintained or can be made available" in accordance with statutory law. The record indicates that during the years in question here, Ty-

son represented to the Illinois Secretary of State that the office it leased in Northfield was its "established place of business" in Illinois.

The issue before the circuit court, and, in the case of the administrative action, before an administrative law judge, had been whether the rented office space and phone line were activities beyond the scope of protection of Public Law 86—272. The circuit court, relying on *Wisconsin Department of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 120 L. Ed. 2d 174, 112 S. Ct. 2447 (1992), ruled that Tyson's maintenance of an office in Illinois was a contact with Illinois that was *per se* beyond the scope of protection in Public Law 86—272. The court also affirmed the Department's imposition of penalties related to the tax deficiencies. Although the court issued separate written orders in the two cases, the court's order in the administrative review decision, noting that the two cases involved identical legal issues and substantially similar facts, simply referenced the reasoning set out in the other order. Tyson now appeals from both orders.

The standard of review on appeal from a grant of summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992). Similarly, where, as here, the question involved on review pursuant to the Administrative Review Law is one of law, the findings of an agency are not binding on this court and our review is *de novo*. See *Thomas M. Madden & Co. v. Department of Revenue*, 272 Ill. App. 3d 212, 215, 651 N.E.2d 218 (1995); *City of Peru v. Illinois State Labor Relations Board*, 167 Ill. App. 3d 284, 286, 521 N.E.2d 108 (1988).

■ Article I, section 8, of the United States Constitution provides, in pertinent part, that the Congress shall have the power to regulate commerce "among the several States." U.S. Const., art. I, § 8. In 1959, the United States Supreme Court handed down *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 3 L. Ed. 2d 421, 79 S. Ct. 357 (1959). In *Northwestern States*, salesmen for an Iowa cement corporation, operating out of a three-room office in Minnesota that was rented by their employer, engaged in a regular and systematic course of solicitation of orders for the sale of the company's products in Minnesota. The solicited orders were then accepted, filled, and delivered from an out-of-state plant. The salesmen also dealt with complaints about goods that had been lost or damaged in shipment, forwarding such complaints to the company's out-of-state headquarters. The Supreme Court rejected commerce clause and due process challenges to Minnesota's imposition of an income tax on Northwestern States, concluding that "net income from the interstate operations of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly apportioned to local

activities within the taxing State forming sufficient nexus to support the same." *Northwestern States*, 358 U.S. at 452, 3 L. Ed. 2d at 424, 79 S. Ct. at 359.

Shortly thereafter, the Supreme Court declined to hear appeals in *Brown-Forman Distillers Corp. v. Collector of Revenue*, 234 La. 651, 101 So. 2d 70 (1958), *appeal dismissed*, 359 U.S. 28, 3 L. Ed. 2d 625, 79 S. Ct. 602 (1959), and *International Shoe Co. v. Fontenot*, 236 La. 279, 107 So. 2d 640 (1958), *cert. denied*, 359 U.S. 984, 3 L. Ed. 2d 933, 79 S. Ct. 943 (1959). In neither case had the persons engaging in sales solicitation maintained an office in the taxing state. The Court's refusal to hear those two cases, along with the Court's decision in *Northwestern States*, raised concerns in the business community that *Northwestern States* might be read to suggest that a company that merely engaged in "solicitation" within a state could be subjected to income taxation based on the interstate sales solicited by company representatives.

In response, Congress passed Public Law 86—272, which conferred immunity from state income taxes on companies whose "only business activities" in a state consisted of "solicitation of orders" for interstate sales. *Wisconsin Department of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 223, 120 L. Ed. 2d 174, 185-86, 112 S. Ct. 2447, 2453-54 (1992); 15 U.S.C. § 381(a) (1988).

■ The leading case interpreting Public Law 86—272 is *Wisconsin Department of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 120 L. Ed. 2d 174, 112 S. Ct. 2447 (1992). In *Wrigley*, 505 U.S. at 228-29, 120 L. Ed. 2d at 187-88, 112 S. Ct. at 2456-57, the Supreme Court found that activities that are "entirely ancillary" to the protected activity of solicitation of orders are protected. The Court went on to note, however, that the exception in subsection (c), which allowed the maintenance of an in-state office by independent contractors whose activities consist solely of making or soliciting orders for sales, implies by its existence that the maintenance of an office within the state, by the company or on its behalf, goes beyond the "solicitation of orders" regardless of whether the office is maintained exclusively to facilitate requests for purchases. *Wrigley*, 505 U.S. at 224-25, 230, 120 L. Ed. 2d at 187, 190, 112 S. Ct. at 2454, 2457. The Court noted that the office exception in the statute "seemingly represents a judgment that a company office within a State is such a significant manifestation of company 'presence' that, absent a specific exemption, income taxation should always be allowed." *Wrigley*, 505 U.S. at 230, 120 L. Ed. 2d at 190, 112 S. Ct. at 2457. The Court also found that where a company has performed some in-state business activities that went beyond the solicitation of orders, courts should analyze those activities to

determine whether they were *de minimis* in nature. *Wrigley*, 505 U.S. at 231-32, 120 L. Ed. 2d at 191, 112 S. Ct. at 2458. The *de minimis* activities of an out-of-state corporation would not cause the corporation to lose its tax immunity unless those activities established "a nontrivial additional connection with the taxing State." *Wrigley*, 505 U.S. at 232, 120 L. Ed. 2d at 191, 112 S. Ct. at 2458.

Illinois has not enacted regulations or a statute interpreting Public Law 86—272. Although regulations were at one time proposed, they were later withdrawn and never adopted. See 19 Ill. Reg. 6135 through 6152 (proposed April 28, 1995).

■ Tyson first contends that the circuit court misinterpreted Public Law 86—272 and the Supreme Court's decision in *Wrigley* when it ruled Tyson's activities in Illinois permitted Illinois to impose its income tax upon Tyson. The circuit court's order stated that, under the agreed facts and the Supreme Court's decision in *Wrigley*, it was clear that Tyson maintained an office in Illinois and that fact, standing alone, was sufficient to remove the protections of Public Law 86—272 from Tyson's reach. Tyson contends that the circuit court "did not seriously consider whether Tyson's rental of the Northfield space was either *de minimis* additional activity, or entirely ancillary to its protected activities."

The circuit court's holding that Tyson's maintenance of an office in Illinois was sufficient to remove the protections of Public Law 86—272 was not in error. In *Wrigley*, the Court noted:

> "Even if engaged in exclusively to facilitate requests for purchases, the maintenance of an office within the State, by the company or on its behalf, would go beyond the 'solicitation of orders.' *** [Subsection (c) of the statute] seemingly represents a judgment that a company office within a State is such a significant manifestation of company 'presence' that, absent a specific exemption, income taxation should always be allowed." *Wrigley*, 505 U.S. at 230, 120 L. Ed. 2d at 190, 112 S. Ct. at 2457.

Tyson notes that the office being discussed in *Wrigley* was a sales office and that here the office was connected to the registration of Tyson's truck fleet rather than the solicitation of sales. Therefore, Tyson reasons, the language from *Wrigley* quoted above is inapplicable. We disagree. Public Law 86—272 was attempting to insulate limited interstate sales activities from being taxed. If the *Wrigley* Court found that an office related to sales was *per se* not entitled to protection under the Law, then, logically, an office for any other purpose would be even less likely to enjoy protection under the Law. We see no reason why the Supreme Court's statements in *Wrigley* should not apply to the office maintained by Tyson here.

Tyson maintains that even where a company maintains an office, a court should examine whether protection is afforded under the *de minimis* exception outlined in *Wrigley*. The plain language regarding the office exception used by the Court in *Wrigley* does not support Tyson's contention. Nor are we persuaded by Tyson's reliance upon the Department of Revenue's own proposed regulations from 1995. Tyson maintains that the general *de minimis* rule appears in the proposed regulations to be applicable to all activities, including the maintenance of an office. Upon review of the proposed regulations, we disagree. The *de minimis* rule would not apply because a more specific provision within the same section relied upon by Tyson states that the maintenance of any office or other place of business in Illinois that does not strictly qualify as an "in-home" office as described, shall, by itself, cause the loss of protection under the section. 19 Ill. Reg. 6148 (proposed April 28, 1995). Moreover, not only were these regulations not in effect at the time of the events in question before us, but the proposed regulations in question were withdrawn for further review and never adopted. The proposed amendments are therefore without authoritative effect. See *In re Estate of Miller*, 230 Ill. App. 3d 141, 147, 595 N.E.2d 630 (1992). In this regard, the Department correctly notes that were we to begin basing decisions on regulations that were proposed and later withdrawn, the result would be to create a chilling effect on agencies. The circuit court did not err in finding that, under *Wrigley*, the maintenance of an office by Tyson in Illinois was dispositive in determining that Tyson was not protected under Public Law 86—272.

Further, even assuming, *arguendo*, that the "entirely ancillary" standard and *"de minimis"* exception were applicable to cases in which an out-of-state company maintains an office in Illinois, we would find that in the instant case, the standards for protection under those tests have not been met.

Tyson maintains that its solicitation of sales, delivery of products in its trucks to customers within Illinois, and registration of its fleet of trucks with the Secretary of State pursuant to the International Registration Plan were all protected activities under Public Law 86—272. Therefore, Tyson reasons, any additional activities that were entirely ancillary to the truck registration were also protected under *Wrigley*. Tyson argues that where there was nothing in the record to indicate that the leased office space served any independent business function apart from its connection to the registration of Tyson's truck fleet in Illinois, the activity was entirely ancillary to an activity protected by Public Law 86—272 within the *Wrigley* doctrine. In support, Tyson states that every court that has considered the question of

whether mere qualification to do business in a state subjects a corporation to net income taxes has found that it does not.

Tyson's argument, however, answers the wrong question. Tyson broadly lumps registration of the truck fleet in Illinois pursuant to the IRP within the delivery function. Public Law 86—272 protects, under certain circumstances, activities involving solicitation and the subsequent filling of solicited orders through deliveries from outside the state. 15 U.S.C. § 381(a)(1) (1988). The relevant inquiry, then, is whether registration under the IRP is an activity that is entirely ancillary to a request for purchases, and the subsequent delivery of those products, not whether the office and phone were entirely ancillary to registration of the truck fleet in Illinois under the IRP.

Tyson chose Illinois as its base jurisdiction for purposes of IRP registration. Illinois' applications and instructions for the IRP state that the IRP is "a method of licensing truck and bus fleets apportionately among two or more member jurisdictions." Participation in the IRP allows a truck to operate with just one registration plate and one cab card per vehicle. The cab card indicates the various jurisdictions in which the unit is legal to operate. A base jurisdiction is defined as "where the registrant has an established place of business, where mileage is accrued by the fleet, and where operational records of such fleet are maintained or can be made available" in accordance with statutory provisions. It appears that Tyson's purpose in establishing the office and phone line in question here was to enable it to meet the requirements of using Illinois as its "base jurisdiction" under the IRP. We agree with the Department's contention that Tyson's registration of its truck fleet under the IRP and maintenance of an office in Illinois served an independent business function apart from soliciting or delivering orders in that it allowed Tyson to establish Illinois as a "base jurisdiction" under the IRP and thus gain the benefits of proportional registration among member jurisdictions of the IRP.

The fact that Tyson was required to have "an established place of business" in Illinois in order to choose Illinois as its base jurisdiction for IRP purposes distinguishes this case from the cases relied upon by Tyson for the proposition that registration to do business is a protected activity. In neither *Commissioner of Revenue v. Kelly-Springfield Tire Co.*, 419 Mass. 262, 643 N.E.2d 458 (1994), nor *Kelly-Springfield Tire Co. v. Bajorski*, 228 Conn. 137, 635 A.2d 771 (1993), did the act of qualifying to do business in a state result in the corporation acquiring a physical presence in the state. Further, choosing Illinois as its base jurisdiction for IRP purposes was a voluntary action. Tyson could have obtained the same benefits under the IRP by using another state as its base jurisdiction or could have simply registered its trucks to

deliver in Illinois under non-IRP conditions. In either case, Tyson could still deliver its products in Illinois without the necessity of having an established place of business in Illinois in order to do so.

In sum, where registration of the truck fleet under the IRP using Illinois as its base jurisdiction was not entirely ancillary to the delivery of solicited orders, where Tyson was required to have an established place of business in Illinois in order to use Illinois as its base jurisdiction for IRP purposes, and by so doing reaped various benefits under the IRP, it cannot be said that the activities of Tyson in this case were entirely ancillary under the test set forth in *Wrigley*.

We have already found that, where Tyson maintained an office in Illinois, the *de minimis* exception set forth in *Wrigley* would not apply. We will briefly address, however, Tyson's contention that its actions here were *de minimis*. Tyson argues that "[t]he expenditure of $500 per year to have an address in Illinois, and the receipt of ten phone calls per year which were merely referred to Arkansas, is surely a trivial additional connection with Illinois." Our review of the record finds that Tyson was doing more than renting an "address." It signed a lease for an office and set up a telephone line to accompany the office. At the leased office location, employees of Tyson's landlord occasionally answered a phone line paid for by Tyson, which was publicly listed under Tyson's name, and then directed callers to call Tyson headquarters in Arkansas. In doing so, those persons were acting as Tyson's representatives. The purpose of the office lease and telephone was to establish a place of business in order to use Illinois as its base jurisdiction for registration of its fleet of trucks under the IRP. Tyson's characterization of its activities ignores the purpose for which the office and telephone line were acquired, and the ensuing benefits. Here, where Tyson leased an office, used it as "an established place of business" for the purposes of using Illinois as its IRP base and for garnering all of the benefits such registration enjoys, and where a phone line was maintained, listed in the telephone book, and sometimes answered by persons acting as representatives of Tyson, such activity was not *de minimis* in nature.

Finally, we are unpersuaded by Tyson's assertion that to find it taxable in Illinois we must sanction a "substantial extension" of the Supreme Court's decisions in *Northwestern*, *Heublein, Inc. v. South Carolina Tax Comm'n*, 409 U.S. 275, 34 L. Ed. 2d 472, 93 S. Ct. 483 (1972)[1], and *Wrigley*, and ignore what Tyson terms, without citation, to be "settled law." Finding Tyson subject to taxation under the facts

---

[1]In *Heublein*, the taxpayer company had one employee in South Carolina who maintained an office in his home and a desk at the warehouse of a local

present here comports with existing case law and is not in opposition to Congress' goal, in enacting Public Law 86—272, of promoting interstate commerce by preventing any state from taxing a company that engages in nothing more than the solicitation of orders within the state's borders.

■ Tyson next contends that the circuit court erred by failing to apply the proper standard to the Department's motion for summary judgment. According to Tyson, the circuit court's recitation of the facts demonstrates that the court failed to construe the stipulated evidence presented strictly against the Department as movant and liberally in favor of Tyson as required when deciding a motion for summary judgment. See *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 423-24, 706 N.E.2d 460 (1998) (noting that "[b]ecause summary judgment is a drastic means of disposing of litigation, the court has a duty to construe the record strictly against the movant and liberally in favor of the nonmoving party"). Tyson argues that the grant of summary judgment is especially errant here in light of the further presumption that taxing statutes should be construed most strongly against the taxing body and in favor of the taxpayer. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202, 545 N.E.2d 695 (1989). According to Tyson, the circuit court could not have reached the conclusion it did without "embellishing" the record by finding that Tyson had representatives at its leased office space in the form of employees of its landlord who answered phone calls to the Tyson phone line. This contention is without merit. Contrary to Tyson's contention, our *de novo* review of the circuit court's finding that Public Law 86—272 does not protect Tyson from taxation in Illinois reveals that the court relied upon the stipulated facts and did not engage in "embellishment." As pointed out by the Department, the comments Tyson terms to be embellishments came after the court had concluded its findings regarding Tyson's tax liability and were instead made during

---

distributor of the company's products. The Court, however, found that it "need not decide" the question of whether the actions of the company representative in, among other things, maintaining the office, fell within the term "solicitation," because the company had engaged in other acts that were clearly neither solicitation nor the filling of orders by delivery within the meaning of section 381(a)(1). *Heublein*, 409 U.S. at 278, 3 L. Ed. 2d at 476-77, 93 S. Ct. at 486. We believe Tyson reads too much into the Court's failure to address the office issue in *Heublein* when it contends that the "clear implication" of the decision is that office arrangements less substantial than a typical sales office are not automatically within the office exception. We also find Tyson's interpretation of *Heublein* to be at odds with the Court's later discussion of the office exception in *Wrigley*.

the court's discussion of appropriate penalties. Moreover, where the stipulated facts indicate that employees of Tyson's landlord had the authority to answer the Tyson telephone line and refer callers to Tyson headquarters, the only fair inference that could be drawn is that those employees were acting as Tyson's representatives in so doing.

Tyson contends that the circuit court erred in failing to apply the presumption that taxing statutes are to be construed most strongly against the government and in favor of the taxpayer. The Department responds that the Law is more in the nature of a tax exemption. Statutes granting tax exemptions are to be construed strictly in favor to the taxing body and against exemption. *Thomas M. Madden & Co. v. Department of Revenue*, 272 Ill. App. 3d 212, 215-16, 651 N.E.2d 218 (1995). We note that a reading of *Wrigley* finds the Supreme Court describing Public Law 86—272 as conferring immunity from income taxes and limiting the power of states to tax. We disagree with Tyson's characterization of the Law as a taxing statute and therefore find that the presumption that it is to be construed strictly in favor of the taxpayer does not apply.

■ Tyson additionally argues that the grant of summary judgment allowing it to be taxed should be reversed because it will otherwise have been subjected to multiple income taxation. Tyson does not argue in this regard that Public Law 86—272 or any particular statute in Illinois is discriminatory. Rather, Tyson bases its assertion solely on the stipulated fact that its Illinois sales were already taken into account in its income taxes paid to other states using other states' apportionment formulas. Here, where the possibility of multiple taxation arises through Tyson's own failure to pay in Illinois, Tyson's speculative assertion that multiple taxation might occur does not present a sufficiently compelling basis to require reversal of the decision below. See *Dover Corp. v. Department of Revenue*, 271 Ill. App. 3d 700, 709, 648 N.E.2d 1089 (1995) (noting that courts are concerned when double taxation is caused through no fault of the taxpayer, not when the risk of double taxation is cause by the taxpayer's own conduct in failing to file tax returns). We also find unpersuasive Tyson's contention that the decision below should be reversed because Illinois is without legislation or regulations that interpret Public Law 86—272 and taxpayers are thus without "guidance."

■ Finally, Tyson contends that the circuit court erred in failing to abate penalties against Tyson which by statute do not apply to a taxpayer with reasonable cause for a tax position.

Penalties of $6,583 for 1986 and $25,835 for 1988 were assessed against Tyson. $21,307 in penalties was assessed for failure to file tax returns without reasonable cause, $4,261 for failure to pay tax due to

negligence, and $6,850 for underpayment of tax without reasonable cause. The above penalty amounts were assessed under sections 1001, 1002(a) and 1005(a), respectively, of the Illinois Income Tax Act. Ill. Rev. Stat. 1989, ch, 120, pars. 10—1001, 10—1002(a), 10—1005(a). Sections 1001 and 1005(a) of the Income Tax Act provided that the penalties for failure to file tax returns and for underpayment of tax would not apply if it is shown that the failure to comply was due to "reasonable cause." Ill. Rev. Stat. 1989, ch. 120, pars. 10—1001, 10—1005(a). Section 1002(a) of the Income Tax Act provided that the penalty applies only where a tax deficiency was due to "negligence or intentional disregard of rules and regulations." Ill. Rev. Stat. 1989, ch. 120, par. 10—1002(a).

Tyson, in arguing that the circuit court erred, first depends on regulations issued by the Department in 1994 under the Uniform Penalty and Interest Act (35 ILCS 735/3—1 *et seq.* (West 1996)). The regulations interpret the terms "reasonable cause" and "negligence." The regulations relied upon, however, were issued well after the time the events for which the penalties were imposed occurred.

Tyson also reiterates its previous arguments, conditioning its contention that it should not pay penalties on its belief that it was subjected to double taxation and that its activities in Illinois were either *de minimis* or were ancillary to the solicitation process. As discussed previously, we disagree with these assessments. The circuit court did not err in failing to abate the penalties imposed on Tyson in regard to the taxes at issue.

Accordingly, the judgments of the circuit court in cases No. 90 L 0394 and No. 91 L 51244 are affirmed.

Affirmed.

COUSINS, P.J., and McNULTY, J., concur.